UNITED STATES of America

v.

UNITED STATES STEEL CORPORA-
TION, Bethlehem Steel Company, Na-
tional Steel Corporation, Great Lakes
Steel Corporation, Jones & Laughlin
Steel Corporation, Armco Steel Corpora-
tion, Republic Steel Corporation, Wheel-
ing Steel Corporation, James P. Barton
and W. J. Stephens, Defendants.

United States District Court
S. D. New York.
Aug. 12, 1964.

See also 233 F.Supp. 148.

John J. Galgay, Chief, New York Office, Antitrust Division United States Dept. of Justice, New York City, Samuel Karp, Antitrust Division United States Dept. of Justice, Washington, D. C. (Philip F. Cody, John H. Earle, Marshall C. Gardner, Augustus A. Marchetti, and Baddia J. Rashid, Attys., Dept. of Justice, on the brief), for the United States.

White & Case, New York City, for defendant, United States Steel Corp.

Cravath, Swaine & Moore, New York City, for defendant, Bethlehem Steel Co.

Cleary, Gottlieb, Steen & Hamilton, New York City, for defendants, National Steel Corp. and Great Lakes Steel Corp.

Sullivan & Cromwell, New York City, for defendant, Jones & Laughlin Steel Corp.

Breed, Abbott & Morgan, New York City, for defendant, Armco Steel Corp.

Jones, Day, Cockley & Reavis, Cleveland, Ohio, for defendant, Republic Steel Corp.

Wickes, Riddell, Bloomer, Jacobi & McGuire, New York City, for defendant, Wheeling Steel Corp.

Simpson, Thacher & Bartlett, New York City, for defendant, James P. Barton.

Rosenman, Colin, Kaye, Petschek & Freund, New York City, for defendant, W. J. Stephens.

WEINFELD, District Judge.

This is a motion joined in by all defendants, eight corporations and two individuals, for an order pursuant to Rule 21(b) [1] of the Federal Rules of Criminal Procedure transferring this case to the Western District of Pennsylvania at Pittsburgh. One of the individual defendants, in addition to reliance upon matters advanced generally by all defendants to support the transfer, moves separately on a ground singular to him.

The indictment charges that the defendants and others, over a six year period, from 1955 to 1961, were participants in a conspiracy to eliminate price competition in the sale of carbon steel sheets in violation of section 1 of the Sherman Act.[2] The details of the indictment are summarized in the opinion filed this day denying the defendants' motion for its dismissal and need not be repeated here. The "Jurisdiction and Venue" allegation of the indictment sets forth that the conspiracy was carried out in part in this district. The indictment specifically alleges that the defendants and the co-conspirators effectuated the alleged conspiracy by means specifically enumerated therein at meetings at hotels in New York City within this district, among other places. In addition to these indictment allegations government counsel has submitted an affidavit wherein he states that most of the trial evidence will relate to acts and conduct of the defendants, corporate and individual, and other alleged co-conspirators which occurred in this city and that in other respects this district is intimately connected with the offense charged in the indictment. The Govern-

1. Rule 21(b) provides: "The court upon motion of the defendant shall transfer the proceeding as to him to another district or division, if it appears * * * that the offense was committed in more than one district or division and if the court is satisfied that in the interest of justice the proceeding should be transferred to another district or division in which the commission of the offense is charged."

2. 26 Stat. 209 (1890) as amended, 15 U.S.C. § 1 (1958).

ment proposed that the Court examine the grand jury minutes *in camera,* but the defendants objected unless the minutes were disclosed to them. Without passing upon the validity of the defendants' objection, the Court has decided not to inspect the minutes and for the purposes of this motion accepts the Government's statement that most of the acts upon which it relies to sustain the indictment charge were committed in this district. The Government concedes that venue also could lie in the Western District of Pennsylvania, as well as many other districts throughout the country. Accordingly Rule 21(b) is properly invoked and the remaining question is whether sufficient cause has been shown to satisfy the Court that the proposed transfer is "in the interest of justice"—a determination which rests upon the facts of each case.[3]

Pittsburgh, the seat of the proposed transferee court, is the site of the principal place of business of three defendants, National Steel, Jones & Laughlin and United States Steel Corporation.[4] The other five corporate defendants have their principal offices in other districts: Great Lakes Steel at Detroit, Michigan (Eastern District of Michigan); Armco Steel at Middletown, Ohio (Southern District of Ohio); Republic Steel at Cleveland, Ohio (Northern District of Ohio); Wheeling Steel at Wheeling, West Virginia (Northern District of West Virginia), and Bethlehem Steel at Bethlehem, Pennsylvania (Eastern District of Pennsylvania). All eight corporate defendants maintain offices in this district for one purpose or another.

The two individual defendants reside in the Pittsburgh area, but one, the President and Chief Operating officer of Jones & Laughlin, is a comparatively recent resident there, since March 1962. During the indictment period, 1955 to 1961, while employed by Bethlehem Steel Company, he lived at Bethlehem, Pennsylvania.

To set forth the minutiae of detail contained in the voluminous affidavits submitted by each defendant not only would prolong this opinion but serve no purpose since, in urging the transfer, each relies upon general grounds which fall within fairly well defined categories. These include principally: (1) the location of the principal place of business and the focus of sheet mill operations; (2) the location of files, records and correspondence; (3) the location of executives and personnel of defendants, as well as potential witnesses; and (4) easier accessibility to the proposed transferee court. However much the factual details have been elaborated by the defendants, the nub of their claim is that a transfer is commanded "in the interest of justice," not only because the greater convenience of the defendants would be served, but to refuse it would impose an undue and onerous burden upon them in the preparation and presentation of their defense, seriously hamper and disrupt the functional operation of each corporation and harshly interfere with the normal daily habits and activities of the

3. Since whether the "interest of justice" requires transfer is a question addressed to the trial court's discretion, Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240, 245, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964), the decided cases under Rule 21(b)—each with its own unique facts— offer little guidance here. In United States v. National City Lines, 7 F.R.D. 393 (S.D.Cal.1947), for example, transfer was ordered to the district where the alleged conspiratorial agreement had taken place. And in United States v. Swift & Co., 158 F.Supp. 551 (D.D.C. 1958), a civil case was transferred to a district where all trial counsel were lo-

cated and where the Government maintained an antitrust field office. Similarly, transfers have been motivated in part by the prospect of vast amounts of economic data being crucial to decision, United States v. Swift & Co., supra, and by the likelihood that the jury would be asked to view plant facilities, United States v. General Motors Corp., 194 F.Supp. 754, 756 (S.D.N.Y.1961).

4. United States Steel also maintains a principal place of business in New York City where, however, it asserts only financial and corporate matters are handled.

individual defendants, key personnel and other employees who may be called upon to participate either in defense preparation or at the trial.

The claims are broad but the facts fail to sustain them. At the outset it must be recognized that every litigation, particularly a criminal prosecution, imposes burdens upon a defendant and brings in its wake dislocation from normal occupational and personal activities. The burdens imposed and inconvenience suffered vary from case to case and from defendant to defendant within a case; it is a matter of degree depending upon a variety of circumstances. In this respect this case is no different from any other. The Court is satisfied that no matter where this trial is conducted, there will be inconvenience to the parties, their executives, their counsel and their witnesses. But mere inconvenience, interference with one's routine occupational and personal activities, and other incidental burdens which normally follow when one is called upon to resist a serious charge do not ipso facto make the necessary showing that a transfer is required in the interest of justice.[5] As a general rule a criminal prosecution should be retained in the original district. To warrant a transfer from the district where an indictment was properly returned it should appear that a trial there would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome; and, necessarily, any such determination must take into account any countervailing considerations which may militate against removal.

The fact that three of the defendants maintain principal offices in the proposed transferee district furnishes no ground, in and of itself, for granting the motion; indeed, the Supreme Court has indicated that this factor has no independent significance.[6] Nor is the defendants' position bolstered by the bare fact that these three defendants direct their carbon steel sheet operations from Pittsburgh. The other five defendants, located at varying distances from Pittsburgh, can make no such claim but contend that their headquarters where such activities are centered are sufficiently close to Pittsburgh to make it a more desirable and convenient forum than New York. So too the circumstance stressed by the defendants that carbon steel sheet is manufactured in and about the Western District of Pennsylvania and not in this district is without substantial importance on this motion. The issue in the case is the claimed conspiratorial agreement to eliminate price competition in the sale of carbon steel sheets. The alleged illegal agreement, the hard core of the charge, could have been made in a hotel room in a district removed from the site of manufacture or the scene of management operations—and indeed such appears to be the Government's claim here. In this circumstance the location of mills, furnaces, and of sales, distribution and executive offices has little bearing on the issue of transfer of the forum.

On the other hand, of substantial relevance is the location of records, witnesses and such key personnel of defendants as may be called upon to assist in the defense. To put these matters in proper perspective it is desirable first to consider the question of access to the respective courthouses since it in turn has a bearing on all factors.

As to the Pittsburgh based defendants, that city obviously is the most convenient forum; however, New York is readily accessible. The two cities are 320 miles apart with excellent air and rail service. There are 56 daily flights between them. Moreover there are more daily flights to New York than to Pittsburgh from each of the cities where the other five defendants are located.

---

5. Cf., e.g., United States v. United States Steel Corp., 226 F.Supp. 152, 155–156 (S. D.N.Y.1964).

6. Platt v. Minnesota Mining & Mfg. Co., supra, 376 U.S. at 245, 84 S.Ct. 769 (1964).

As to three of these defendants the differences in mileage from their respective locations to the courthouse either at Pittsburgh or here, considered in terms of air travel, are relatively insignificant. Armco, at Middletown, Ohio, is 269 miles from Pittsburgh and 560 miles from New York City; Great Lakes at Detroit is 279 miles from Pittsburgh and 510 miles from New York City; and Republic Steel at Cleveland is 130 miles from Pittsburgh and 418 miles from New York City. With excellent non-stop service into the three metropolitan airports and quick helicopter service to this courthouse area, this district is as accessible as the other to these non Pittsburgh based defendants, their witnesses and personnel, and as a realistic matter there is no greater inconvenience or hardship whether they travel to the one place or the other. Bethlehem is only 99 miles from New York and clearly has readier access to this district than to Pittsburgh, 279 miles away and with fewer connections. To be sure, in the case of Wheeling Steel which is only 60 miles from Pittsburgh and 380 miles from New York, its greater convenience would undoubtedly be served by a trial at Pittsburgh since automobile travel would be feasible, but this is offset by the Bethlehem situation.

The efficiency of modern air transportation renders rather sterile any argument based upon differences in distances from the respective courthouses. It is quite obvious that travel would be principally by air and the fact is that with prime service into New York it would be of little consequence to most of the non Pittsburgh defendants whether they travel to Pittsburgh or New York. And apart from the excellent and frequent commercial air service into this district, each defendant has available at least one private plane.[7]

So far as witnesses are concerned, of the sixteen who appeared before the grand jury only five reside or have offices in Pittsburgh. The others are located at Wheeling, West Virginia; Youngstown, Cleveland, and Middletown, Ohio; Warren and Detroit, Michigan; Bethlehem, Pennsylvania, and Bronxville, New York. Two witnesses who testified before the grand jury have since retired and now reside in Florida. On balance it appears that a trial would be as convenient for the majority of these witnesses at one place or the other.

Against this background of accessibility to this district we consider the other contentions of the defendants.

All the defendants refer to the vast number of files which they say will be required for adequate preparation for trial and each separately underscores the heavy burden which would be cast upon it if required to move files to New York and stresses the difficulty of ready access to, and prompt location of, documents on a day to day basis during the trial's progress, if venue is retained here. All defendants suggest files of staggering proportions. United States Steel states that the scope of the Government's charge is so extensive that for proper trial preparation it will require a review and sifting of records contained in more than 3000 drawers of files at its Pittsburgh principal office. The Court is of the view that problems with respect to records and documents, and their production, the allegations of which are couched in general terms, have been somewhat exaggerated by all the defendants. The extent of required files may be gauged, in some measure, by the fact that after months of inquiry and presentation of evidence before the grand jury touching upon the activities not only of these defendants but also of three corporations named as co-conspirators, as

---

7. According to the Government's affidavit in opposition to this motion, four aircraft each are registered to Armco, Bethlehem, and Jones & Laughlin; three each to Republic and United States Steel; two to National; and one each to Great Lakes and Wheeling. These range from turboprop Viscounts and Gulfstreams to smaller craft. At least some of these are regularly used for trips to New York.

well as others, all the documents which the Government relies upon to proceed to trial (obtained from the defendants' files) are contained in two standard five-drawer filing cabinets and include material relating to products other than the subject matter of this indictment.[8] The comparative simplicity of the files and record problem is further emphasized by the circumstance that the documentary proof of the Government in support of the charge consists in the main of defendants' price lists for extras.

Finally on this subject, it is evident even to a casual observer that much sifting of documents has necessarily been done in order to comply with the grand jury subpoena for the production of specified files. In addition to the presentation of this documentary evidence, the sixteen witnesses who testified before the grand jury were officers and employees of various defendants and most are still in their employ. The Government alleges, and it appears to be conceded, that after each witness had testified he was debriefed by counsel for his company and a summary of his grand jury evidence prepared, the substance of which was then made known to counsel representing other steel companies referred to in the witness' testimony. Since the Government perforce was compelled in its grand jury presentation to rely upon the testimony of personnel of the defendants and documents culled from their files, it is not unrealistic to suggest that the defendants are aware of the evidence the Government generally depends upon to sustain the indictment charge. In the light of this entire situation it is apparent that the necessary additional documents required by the defense have in large measure already been canvassed and are or should be readily available for prompt use upon a trial, wherever conducted. To this extent the Court is satisfied that the burdens of defense preparation have been greatly lightened

and are not as devastating as has been painted by some of the defendants. In the event, and defendants have made no showing to this effect, that economic data not previously canvassed by the grand jury is required, pretrial screening and photocopying should reduce to manageable limits the burden of transporting such materials.

As already noted, a trial in Pittsburgh undoubtedly would serve the greater convenience of the two individual defendants who reside there and that of the three corporate defendants who maintain principal offices there. However, these defendants urge that much more than convenience is involved—that their companies are so organized that the functional efficiency of carbon steel sheet operations will be seriously disturbed if key management personnel are required to participate in a trial or assist counsel in a district away from the home office; whereas if the trial is conducted in Pittsburgh the disruption of defendants' operations will be greatly minimized since their personnel, during court recesses and on evenings and week ends, can attend to corporate duties and, in addition, enjoy normal family life. The non Pittsburgh defendants make similar claims of inordinate disruption of corporate functions and undue interference with family life. The suggestion so strongly advanced by all that if this trial is conducted in any district except Pittsburgh, and attendance thereat of one or more top executives is required, it would seriously impair the smooth functioning operations of these giants of industry, hardly does justice to the concept of corporate continuity and its functional efficiency. The trial itself will not be of unusual duration for cases of this type; the Government's trial estimate of four to six weeks does not appear to be seriously challenged by the defendants and a cooperative attitude by counsel with respect to pretrial procedures may even

---

8. All documents obtained from United States Steel occupy four file drawers; those from Bethlehem, Jones & Laughlin and Republic are in one file drawer for each company; those obtained from National, Great Lakes and Wheeling occupy about one-half a drawer each.

foreshorten this estimate, as experience indicates.[9]

 Moreover, the presence upon the trial of corporate officers of the defendants is not required.[10] Other antitrust suits presenting issues more numerous and of greater complexity than those in the instant case indicate that once a trial goes forward it is the exception rather than the rule that top executives of corporate defendants attend the trial on a day to day or session to session basis. The Court is not persuaded that a trial in this district presents a real threat to effective corporate operation.

Other factors militate against the transfer. All defendants, with the sole exception of Republic Steel, since the inception of the grand jury investigation or during the course of the hearings have retained and had the benefit and advice of New York counsel highly experienced in antitrust matters. It is a fair assumption that to the extent possible up to this stage of the proceedings they have familiarized themselves with matters in preparation for trial eventuality. A transfer foreshadows retention of Pittsburgh counsel to try the case either alone or in association with present New York counsel, resulting in the delay which usually follows to afford newly retained counsel a reasonable time to acquaint themselves with matters to date and for adequate trial preparation. On the other hand, there is no adverse factor of delay by reason of calendar conditions in this district. The case was assigned to this Court under Local Rule No. 2[11] and as soon as all pre-trial procedures are disposed of and the parties are ready to proceed the Court is prepared to fix an immediate trial date.

The Court has also taken into account the Government's claim that the alleged secret meetings and most of the acts relied upon to establish the conspiracy charge occurred within this district; that the Antitrust Division of the Department of Justice has no office in the Western District of Pennsylvania; that it does maintain a field office in this district and the staff members of that office are members of the trial staff in this case.

 Upon the entire record presented on this motion the defendants have failed to satisfy this Court that "the interest of justice" requires transfer to the Western District of Pennsylvania. The motion is denied, as is the separate motion of the defendant Stephens.[12]

---

**9.** Cf. United States v. Bethlehem Steel Corp., 157 F.Supp. 877, 880 (S.D.N.Y. 1958).

**10.** Rule 43 provides: *"Presence of the Defendant."* " * * * A corporation may appear by counsel for all purposes. * * * "

**11.** Local Rule 2(b) provides: "The chief judge, upon his own motion or the motion of any party, may assign a long and complicated case to a judge for all purposes including the following: (1) to hear all motions and preliminary applications; (2) to conduct the pre-trial conference; and (3) to preside at the trial of the action."

**12.** All other defendants and the Government have offered no objection to this defendant's request that relevant affidavits be sealed, and it appearing that the public interest does not require otherwise, it is so ordered. The memorandum disposing of this separate application is likewise sealed.