**UNITED STATES of America**

v.

**Victor POSNER and William Scharrer, Defendants.**

**No. 82 CRIM 0325 (LBS).**

United States District Court, S.D. New York.

June 28, 1982.

John S. Martin, Jr., U.S. Atty., S.D. New York, New York City, for plaintiff; K. Chris Todd, Asst. U.S. Atty., New York City, of counsel.

Williams & Connolly, Edward Bennett Williams, Washington, D.C., for defendant Victor Posner.

Culverhouse, Tomlinson, Mills and Cone, Hugh F. Culverhouse, Jr., Miami, Fla., for defendant William Scharrer.

## OPINION

SAND, District Judge.

Defendants Victor Posner and William Scharrer have moved jointly for a transfer of this case to the Southern District of Florida pursuant to F.R.Cr.P. 21(b). For the reasons set forth herein, the motion is granted.

## THE INDICTMENT

The defendants are charged in a 12 count indictment with *inter alia* conspiring to falsify defendant Posner's personal income tax returns and to evade over $1,200,000 in federal taxes between 1976 and 1979.

The indictment charges that Mr. Posner made two charitable contributions of land located in Miami, Florida, to a Florida tax exempt charitable organization, the Miami Christian College.

Mr. Scharrer is said to be the President and the majority shareholder of a Miami real estate brokerage firm and the indictment alleges that Mr. Scharrer twice provided an overstated appraisal of the fair market value of the lands donated by Mr. Posner to the college, and that Mr. Posner utilized these appraisals in claiming deductions on his individual tax returns for 1975 and 1978. With respect to the first transaction which allegedly took place in 1975, a 16 acre parcel was donated, claimed to have a total value of $2,000,000, when in fact, the indictment alleges, the defendants knew the land had a maximum value of only $640,000. Three years later, the indictment alleges, this procedure was repeated with respect to another parcel of six acres, also owned by Posner, and also donated to Miami Christian College, which Scharrer appraised at $1,050,000. Posner claimed a charitable deduction in that amount, although allegedly both defendants knew the six acres had a fair market value of not more than $360,-000.

The sole nexus with New York and the jurisdictional predicate for the return of the indictment in this district, is that in each year, the allegedly false tax returns were prepared by Posner's accountant in New York City.[1]

1. Defendants have also moved for transfer pursuant to 18 U.S.C. § 3237(b) but:

"must concede that it is equally plain that the controlling Second Circuit precedent indi-

APPLICABLE LEGAL PRINCIPLES

F.R.Cr.P. 21(b) provides that:

"For the convenience of parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to him or any one or more of the counts thereof to another district."

Judge Weinfeld has observed, in language often cited with approval (*see, e.g., United States v. Griesa,* 481 F.2d 276, 286 (2d Cir.1973) (Timbers, J., concurring in part and dissenting in part)), that:

"As a general rule a criminal prosecution should be retained in the original district. To warrant a transfer from the district where an indictment was properly returned it should appear that a trial there would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome...." *United States v. United States Steel Corporation,* 233 F.Supp. 154, 157 (S.D.N.Y.1964).

But, although transfer motions are not favored, as Judge Weinfeld's decision granting transfer in *United States v. Alter,* 81 F.R.D. 524 (S.D.N.Y.1979) indicates, and as the Rule itself dictates, there are circumstances where transfer is appropriate. The determination of whether a particular case calls for transfer depends upon the peculiar facts and circumstances of that case. Accordingly, we can consider *seriatim* the factors enumerated by the Supreme Court in *Platt v. Minnesota Mining Co.,* 376 U.S. 240, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964) relevant to this determination: 1. the location of the defendants, 2. the location of possible witnesses, 3. the location of events in issue, 4. the location of documents and records, 5. the disruption of defendant's business, 6. expense to the parties, 7. location of counsel, 8. relative accessibility of place of trial, 9. docket condition of each district, and 10. "any other special elements which might affect the transfer."

FACTORS AFFECTING TRANSFER

1. *Location of the defendants.*

Both defendants reside in Miami—a factor favoring transfer to the Southern District of Florida.

2. *Location of witnesses.*

Most of the witnesses reside in Miami. Indeed, it would appear that the only New York based witness would be the accountant who prepared the tax returns based on information furnished by the defendants from Florida.

Defendants assert that:

"Other than the defendants themselves, it can be predicted that the trial witnesses will include the following Miami area residents: the principals of the Miami real estate development firm that purchased the land from Mr. Posner in 1974; the President, Board members, and legal counsel of Miami Christian College; Mr. Leonard Bisz; those persons who attended the various meetings that transpired preliminary to the land sales and contributions; the recent purchasers of the land in question; a number of experts who will testify about the value of the land at issue; Dade County zoning officials and experts on local zoning law; real estate brokers and prospective buyers involved in offerings of the subject land in 1974 and 1975 and in 1977; and of course, most of the character witnesses for the defendants." Defendants' Memorandum, p. 9.

The defendant Scharrer places particular stress on his desire to call certain local (*i.e.,* Miami-based) elected officials (whom his counsel identified at oral argument) as character witnesses and the special problems which Scharrer would face in inducing

cates that the election provision of § 3237(b) is not available to them."
Memorandum of Points and Authorities in Support of Defendants' Joint Motion for Transfer to the Southern District of Florida (hereinafter "Defendants' Memorandum"), p. 4.

This Court is indeed bound by the holding of the Second Circuit in In Re United States (*United States v. Clemente,* 608 F.2d 76 (2d Cir. 1979), *cert. denied* 446 U.S. 908, 100 S.Ct. 1834, 64 L.Ed.2d 260 (1980)) and the defendants' motion pursuant to 18 U.S.C. § 3237(b) is denied.

such busy officials to travel to New York to testify as character witnesses on his behalf.

The factor of location of witnesses strongly favors transfer.

### 3. The location of events in issue.

The location of events in issue is a consideration which favors transfer. Counsel for Posner asserts that all of the operative events in the case took place within a ten mile radius of the Miami courthouse.

Defendants urge the Court "to recognize that a Florida jury will be better able to judge the reasonableness of Mr. Posner's deductions than a New York jury simply because they will have a greater awareness of the historical sales trends and patterns of development in the locale in question." Defendants' Memorandum, p. 10.

We have some difficulty in accepting the concept of a jury deciding a case based on its own personal knowledge rather than the evidence in the record—a notion which calls to mind the ancient English common law practice of choosing jurors because of their familiarity with the facts at issue at the trial. Photographs, maps and expert testimony can more accurately and properly deal with these issues, rather than a juror's preconception of land value.

■ Defendants assert, however, "it is entirely possible that the defendants will request the opportunity to have the jury view the land for themselves." Defendants' Memorandum, p. 11. A view, while usual in civil condemnation cases, is less common in criminal cases and the grant of a request for a view rests in the sound discretion of the trial judge.

The Government's objection that a view by the jury would be inappropriate because the issue in the case is only the value of the land between the years 1975 and 1978 is somewhat diluted by virtue of the fact that the land was then and is now (we were advised at oral argument) unimproved real estate, which of course has not changed in the interim, although the surrounding neighborhood may have undergone considerable change.

Although whether the defendants will request a view and if requested, whether the court would grant a view, are both conjectural, what is, of course, a certainty is that this option will be foreclosed unless the motion to transfer is granted. The factor of location of events favors transfer.

### 4. The location of documents.

The location of documents and records is not a major concern in these days of easy and rapid transportation. The Government asserts that it has five file drawers of documents but does not dispute that they are readily transportable. Defendants assert that "many of the documents and records relevant to the defense's case are located in Miami." Defendants' Memorandum, p. 11. This factor is in equilibrium insofar as transfer is concerned.

### 5. The disruption of defendant's business.

The disruption of defendants' business is a factor in favor of Miami, although this concern is considerably mitigated by the relatively brief (2–3 weeks) anticipated duration of the trial. Nevertheless, defendants (especially defendant Scharrer) would appear likely "to suffer adverse financial consequences" (Defendants' Memorandum, p. 11) if transfer is denied. This factor favors transfer.

### 6. Expense to the parties.

The Government addressed this issue by an extensive recitation of Posner's wealth and the contention that both defendants are "men of substantial means" (Government's Memorandum, p. 9) who "have failed utterly to offer specifics about any possible financial hardship...". Government's Memorandum, p. 19.

At oral argument, counsel for Scharrer asserted that Scharrer was on the verge of bankruptcy, a contention which the Government's attorney stated took him by surprise. Scharrer was allowed time to file an affidavit as to his financial condition and he has done so. The Government by letter dated June 24, 1982 points persuasively to the gaps in Mr. Scharrer's affidavit as to his

financial posture and his failure to account fully for all assets at his disposal and the disposition of funds previously available to him. Were this the decisive factor with respect to the motion, we might pursue the Government's suggestion that there be further inquiry into Mr. Scharrer's financial ability to stand trial in New York. We do not so regard this consideration and assume for these purposes that although trial in New York City would of course be more expensive for the defendants, it would not be beyond their financial capacity.

### 7. Location of counsel.

Location of counsel is not a decisive factor in this case. Posner's attorney is headquartered in Washington, D.C. but readily agrees that he practices nationally. Scharrer's counsel has newly entered this case, fully aware that it was scheduled for trial in New York in September.

### 8. Relative accessibility of place of trial.

Relative accessibility of place of trial is a neutral factor; both New York and Miami are well served by air and other public transport.

### 9. Docket condition of each district.

We believe that the most serious factor weighing against transfer is the state of the docket in Miami and the effect which the transfer might have in delaying the trial of this case presently set for September 13, 1982. The Government urges that "a transfer moreover will compound the problem of judicial administration in the Southern District of Florida, where 4,000 indictments are anticipated in the near future." Government's Memorandum, p. 19. The defendants' reply that the concerns with regard to the Miami docket are all prospective and somewhat conjectural. This Court's independent inquiry as to the state of the Miami docket confirms the accuracy of defendants' description. Moreover, if the consequence of a transfer of this case would be to occasion untoward delay in its being reached for trial, other procedures are available to enable the trial to go forward expeditiously.[2] However, the criminal docket in this Court is relatively current and although, as indicated above, the docket problem is not insurmountable, this factor tilts against transfer.

### 10. Any other special elements which might affect the transfer.

Finally, we consider the tenth factor which *Platt* enumerates, *i.e.,* "any other special element which might affect the transfer." Defendants raise the question whether the Government may have unfairly attempted to gain an advantage over the defendants by choosing a forum because of its inconvenience, basing venue on "the slimmest of reeds." Defendants' Memorandum, p. 13. Defendants cite *United States v. Johnson,* 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236 (1944) for the admonition that courts should take into account the constitutional guarantee that criminal trials take place in the district where the crime was committed. But of course, *Johnson* considered a similar broad venue provision and rejected the constitutional challenge. The only inquiry mandated by *Johnson* is into the question whether the prosecution has chosen this venue abusively, *i.e.,* in order to gain an advantage by inconveniencing the defendant. *See United States v. Gruberg,* 493 F.Supp. 234, 242–43 n. 5 (S.D.N.Y.1979). We agree with the Government that there has been no showing that the Government purposely sought to burden these defendants by choosing this forum. The Government contends that it returned the indictment here "simply because this lengthy [2 year] investigation was conducted here, all

---

**2.** With respect to the condition of the Miami docket, it appears that:

"To prevent scheduling problems, local federal judges are expected to continue to handle long trials, while shorter ones will be assigned to visiting judges on rotation. *The Southern District* [of Florida] *has virtually no backlog of criminal cases, but does have a significant civil backlog.* Rotating judges, it is expected, will be of inestimable aid in meeting the projected increase in filings as well as helping to reduce the backlog."
The Third Branch, Bulletin of the Federal Courts, Published by the Administrative Office of the U.S. Courts and the Federal Judicial Center, June, 1982, p. 2. (Emphasis added).

documents, exhibits and files are located here and relevant, substantive events—the preparation of the false income tax returns—occurred here." Government's Memorandum, p. 18 (citing *United States v. Gross,* 276 F.2d 816, 819 (2d Cir.) *cert. denied,* 363 U.S. 831, 80 S.Ct. 1602, 4 L.Ed.2d 1525 (1960), for the proposition that venue is proper in the district where tax returns were prepared in a tax fraud case).

■ Although we do not find that there was any deliberate abusive conduct on the Government's part, the short of it is that in every significant aspect, this is a peculiarly and inherently Florida case. Balancing all of the considerations enumerated above and applying the standard of *United States v. United States Steel Corporation, supra,* we find that: "fairness requires the transfer to another district of proper venue where a trial would be less burdensome." Accordingly, the motion to transfer is granted and the Clerk of this Court is directed forthwith to take all steps necessary to transfer the case to the Southern District of Florida.[3]

Motion to transfer granted.

SO ORDERED.

---

3. Other motions have been made by defendants to which the Government has not responded. These motions were made returnable before either this Court or, if transfer is granted, the transferee court. The defendants have requested that such motions be decided by the transferee judge and we agree that this is the more appropriate procedure.