UNITED STATES of America,

v.

Franklin ESTRADA, a/k/a "Frank Estrada," and

Igor Royzman, a/k/a "Michael Malloy," Defendants.

No. 12 CR. 99 SHS.

United States District Court, S.D. New York.

July 20, 2012.

---

Rachel Maimin, United States Attorney Office, New York, NY, for United States of America.

### OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

A grand jury in this District issued a three-count indictment against defendants Franklin Estrada and Igor Royzman in February of this year. Count One alleges that they conspired to commit mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. Counts Two and Three allege that Estrada substantively violated the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343. The substance of the charges is that, from offices in California, Estrada, through Royzman and others, distributed to individuals or businesses in New York and elsewhere certain pills (the "Products") that they represented to be natural, herbal remedies for erectile dysfunction when, in fact, the pills contained chemical analogues of sildenafil, a synthetic compound and controlled substance that is also the active ingredient in the prescription drug that Pfizer, Inc. markets as "Viagra." (*See generally* Gov't Mem. in Opp. to Def.'s Mot. to Transfer Venue (Gov't Opp.) at 2–5; Dkt. No. 20.) Estrada has moved to transfer these proceedings to the U.S. District Court for the Central District of California pursuant to Federal Rule of Criminal Procedure 21(b), which authorizes the Court to "transfer the proceeding ... to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Because Estrada has not shown that any witnesses would be unable to testify in New York, and because a trial in New York would only moderately inconvenience him, the Court declines to exercise its discretion to transfer this case.

Neither defendant challenges the existence of venue in this District. Thus, the Court must determine only whether the interests of justice require transfer for convenience,

> consider[ing] such factors as (a) location of the defendants; (b) location of the possible witnesses; (c) location of the events likely to be at issue; (d) location of relevant documents and records; (e) potential for disruption of the defendant['s] businesses if transfer is denied; (f) expenses to be incurred by the parties if transfer is denied; (g) location of defense counsel; (h) relative accessibility of the place of trial; (i) docket conditions of each potential district; and (j) any other special circumstance that might bear on the desirability of transfer.

*United States v. Maldonado–Rivera*, 922 F.2d 934, 966 (2d Cir.1990) (citing *Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240, 243–44, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964)). "No one of these considerations is dispositive, and '[i]t remains for the court to try to strike a balance and determine which factors are of greatest importance.'" *Maldonado–Rivera*, 922 F.2d at 966 (citation omitted) (alteration in *Maldonado–Rivera*). The Court is also guided by Judge Edward Weinfeld's oft-cited guidance as follows:

> As a general rule a criminal prosecution should be retained in the original district. To warrant a transfer from the district where an indictment was properly returned it should appear that a trial there would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome ....

*United States v. Posner*, 549 F.Supp. 475, 477 (S.D.N.Y.1982) (quoting *United States v. U.S. Steel Corp.*, 233 F.Supp. 154, 157 (S.D.N.Y.1964)). Of course, the general preference notwithstanding, "there are circumstances where transfer is appropriate."

*Posner,* 549 F.Supp. at 477. Courts in this district have uniformly placed the burden on the defendant to show that the interests of justice require transfer. *See, e.g., United States v. Datta,* 797 F.Supp.2d 448, 450 (S.D.N.Y.2011); *United States v. Spy Factory, Inc.,* 951 F.Supp. 450, 464 (S.D.N.Y. 1997).

The essence of Estrada's argument is that defendants and their businesses, through which they are alleged to have committed the crimes, are based in Los Angeles; the events at issue are lodged in California; and defense counsel and certain witnesses and documents are also located in California. Estrada is the owner and CEO of Body Basics, Inc., a Los Angeles-based company that imports the Products from abroad and sells them throughout much of the United States. Royzman controls Actra–Rx OSU Corp., which is also based in Los Angeles and is alleged to have distributed some of the Products for Body Basics. Neither corporation has offices outside of California. Estrada and Royzman are accused of conspiring to defraud purchasers into believing that the Products were over-the-counter herbal remedies when, in fact, they were essentially generic versions of the prescription drug Viagra. The government has not alleged that any contact between Estrada and Royzman or between their businesses took place outside California.

The government responds that defendants are alleged to have distributed the Products nationwide, including into this district, and that the government's attorneys and investigators, some of its witnesses, and all of the relevant documents are in New York. The government is ready to proceed to trial before this Court, and the trial is expected to last one to two weeks. With that background, the Court turns to the factors set forth by the U.S. Supreme Court nearly fifty years ago in *Platt v. Minnesota Mining & Manufac-* *turing Co.,* 376 U.S. at 243–44, 84 S.Ct. 769, considering each in turn.

### (a) "location of the defendants"

■ Courts have given this factor special significance. *See United States v. Ohran,* No. 99 Cr. 142(JSM), 2000 WL 620217, at *3 (S.D.N.Y. May 12, 2000); *United States v. Russell,* 582 F.Supp. 660, 662 (S.D.N.Y.1984). Both defendants reside in the Los Angeles area, and neither is detained. As a result, defendants would be somewhat inconvenienced by a trial in New York. Thus, as the government conceded at oral argument (Tr. of Arg. dated June 21, 2012 ("Tr.") at 4), this factor weighs in favor of transfer. *Cf. United States v. Stein,* 429 F.Supp.2d 633, 645–46 (S.D.N.Y.2006) (denying transfer to home districts in Texas and California despite expected 6 to 8–month–long trial).

### (b) "location of the possible witnesses"

■ Estrada contends that the majority of witnesses are located in California, naming a few in his memorandum and offering to present the Court, *in camera,* with more names of employees and character witnesses that he anticipates calling at trial. Estrada's burden is to show "specific examples of witnesses' testimony and their inability to testify because of the location of the trial." *Spy Factory,* 951 F.Supp. at 457. Apparently recognizing that the bare showing in his papers was insufficient, Estrada added details at the argument on the motion. He represented that, in addition to potential character witnesses, the California-based witnesses would include Estrada himself, the three employees of Body Basics (Tr. at 6), and "a fair sampling" of the "approximately 25 distributors who are in the Southern California area" (Tr. at 5). The substance of the proffered testimony is that these witnesses all believed that the Products were "in fact all natural" (Tr. at

6), and they had no reason to think anything to the contrary—be it statements by Estrada (Tr. at 6–7) or by end-consumers to the distributors (Tr. at 7).

The parties agree that employees' testimony is relevant but dispute the relevance of the proffered absence of consumer complaints to distributors. Even assuming the distributors' testimony is probative of Estrada's intent to defraud, Estrada conceded that he could not identify "any specific person [who] will not be able to come" to New York to testify. (Tr. at 10.) Further, he has made only a minimal showing of inconvenience given the large number of direct airline flights between New York and Los Angeles each day. Thus, Estrada's contention here is actually limited to the cost to him of transporting his witnesses to New York for trial, which is a separate factor. Moreover, counterbalancing defendants' witnesses are the government's New York-based witnesses, including "distributors of the Products ... [and] law enforcement agents based in the New York metropolitan area." (Gov't Opp. at 13.) Accordingly, this factor does not favor transfer.

(c) *"location of the events likely to be at issue"*

■ The majority of "the events likely to be at issue" are alleged to have occurred in Los Angeles. The government relies on defendants' alleged distribution of the Products in the New York area to counterbalance defendant's contention that Los Angeles is the "nerve center" of the alleged fraud. *See United States v. Clark,* 360 F.Supp. 936, 941–43 (S.D.N.Y.1973) (transferring a securities fraud prosecution because "the great majority of the events and transactions which will be in question" occurred in, or closer to, the transferee district, despite statements made in New York). The Court does not find that the nationwide distribution of the Products is *at issue* here for purposes of the Rule

21(b) analysis because Estrada does not dispute that the Products were sold nationwide. Estrada does contend that the evidence will not support the government's allegations regarding what the Products contained and whether defendants knowingly misrepresented their contents—as evidenced by events that are concentrated in Los Angeles, with the exception of lab tests done in Illinois. (*See* Tr. at 12–14.) Thus, Los Angeles and Illinois are the locations of the events at issue.

Still, this factor is not particularly persuasive when defendants are alleged to have intentionally projected their fraud nationwide, including into this District. In *Spy Factory,* as here, the defendants were alleged to have developed a nationwide scheme, based in the proposed transferee district. 951 F.Supp. at 457. Unlike here, though, the defendant in *Spy Factory* operated numerous retail stores across the country, and investigators established "an undercover company in New York City from which telephone calls were made and illegal devices were received." *Id.* As a result, the *Spy Factory* court distinguished the "nerve center" reasoning, finding that because the "criminal activity that was alleged to have occurred ... was national in scope," this factor favored neither side. *Id.* While the New York-based events there were more significant to the litigation than the distribution is here, the differences between the facts in *Spy Factory* and those alleged here are differences of scope, not differences of kind. In other words, although *Spy Factory* does not control, it does mitigate the force of this factor, which, accordingly, slightly favors transfer.

(d) *"location of relevant documents and records"*

■ The documents at issue here were seized by government agents at de-

fendants' businesses in California, but are now at a facility in the New York area and have been produced to defendants in electronic form. Estrada contends, essentially, that technology renders the current location of the seized documents—New York or New Jersey (Tr. at 15)—insignificant, that the government's investigation missed some documents that he intends to use, and, further, that the latter unspecified documents should dictate the Court's analysis of this factor. Estrada cannot have it both ways, and the Court cannot rely on Estrada's naked assertions. "It is well settled that 'given the conveniences of modern transportation and communication,'" the location of the documents is a minor concern, but it is one that favors New York. *See United States v. Layne,* No. 05 Cr. 87(HB), 2005 WL 1009765 (S.D.N.Y. May 2, 2005) (citation omitted).

*(e) "potential for disruption of the defendant['s] businesses if transfer is denied"*

■ Even accepting Estrada's conclusory statements about the effect on his business of potentially a two-week trial in New York, modern technology similarly renders this concern minimal. Estrada has presented no evidence that his work as CEO cannot in large part or in its entirety be performed from afar via electronic communication—be it telephone, e-mail, or videoconferencing. His reliance on *Layne* is misplaced because there, unlike here, there was evidence that the defendant's work had to be undertaken in person with clients. Even assuming that facet of *Layne* had some applicability here, it cannot be gainsaid that "[e]very life is significantly disrupted during a trial wherever it is held." *United States v. Wilson,* No. 01 Cr. 53(DLC), 2001 WL 798018, at *3 (S.D.N.Y.2001); *see also Spy Factory,* 951 F.Supp. at 458–59 (noting inconveniences of a trial regardless of location and finding no evidence telephone and fax could not overcome the distance); *U.S. Steel Corp.,* 233 F.Supp. at 157; *Oil & Gas Ventures— First 1958 Fund, Ltd. v. Kung,* 250 F.Supp. 744, 755 (S.D.N.Y.1966). Any alleged difference in the harm to Estrada's business from conducting the trial in New York, as opposed to Los Angeles, is negligible, and—even if it had been properly supported—would provide only minimal support for the motion.

*(f) "expenses to be incurred by the parties if transfer is denied"*

■ Estrada contends, without any factual support, that the costs of transporting himself, counsel, and the defense witnesses would be ruinous. But he fails to estimate costs or document his alleged inability to pay them. To the contrary, the government submits that Estrada owns two homes valued at over $3 million, and made personal profits of $1.7 million in the past six years from his business. (Gov't Opp. at 10 n. 3.) Moreover, the government has witnesses, counsel, investigators, and support staff that it would have to transport to California if the motion were granted. The only clear asymmetry here is that the government has offices in both locations, while defense counsel arguably would have to rent temporary space in New York. (*See* Tr. at 23.) Thus, but for the cost of temporary office space, the "effect [of the requested transfer] is merely to shift the economic burden to the government." *United States v. Carey,* 152 F.Supp.2d 415, 422–23 (S.D.N.Y.2001). Defense counsel's anecdotal experience of the reduced cost that the government bears for equivalent "government rate" transportation and lodging is unpersuasive. In the absence of evidence of a material difference in total travel costs or, more importantly, evidence that Estrada cannot afford to bear those costs, this factor does not favor transfer.

### (g) "location of defense counsel"

■ Defense counsel is located in Los Angeles, which weighs in favor of transfer. The government, apparently reading "defense" out of *Platt*'s statement of this factor, offers the location of the prosecutors as rendering this factor a wash. The burdens of travel on prosecutors are part of the general preference for holding trials where the indictment is returned. The *Platt* factor denominated "location of defense counsel" concerns exactly that: the location of defense counsel, which is Los Angeles.

### (h) "relative accessibility of the place of trial"

The parties agree that New York is as accessible a city as Los Angeles. (Tr. at 26.) This factor does not favor transfer. *See, e.g., U.S. Steel Corp.*, 233 F.Supp. at 158 (noting that "[t]he efficiency of modern air transportation" attenuates accessibility concerns).

### (i) "docket conditions of each potential district"

■ Estrada makes no showing regarding the relative docket conditions of this district and the Central District of California and concedes that the two courts are both busy. (Tr. at 26.) Regardless of the relative docket conditions, this Court has, familiarity with the case, gives statutory preference to its criminal docket, *see* Fed.R.Crim.P. 50, and stands ready to preside over the trial of this action at essentially any date the defense has available.

### (j) "any other special circumstance that might bear on the desirability of transfer"

■ The Court recognizes that Estrada has shown a special circumstance that weighs in favor of transfer: his son's illness and attendant treatments. However, as difficult as that situation most assuredly is, Mr. Estrada will not be able to drive his son to doctors' appointments for the week or two he is on trial—whether the trial is in New York or in Los Angeles. Moreover, the government has agreed not to oppose any appropriate adjournment to accommodate Estrada's need to be with his son at any critical juncture. Accordingly, this factor weighs slightly in favor of transfer.

In sum, a number of factors—the location of defendants, their businesses, their counsel, and the events likely to be at issue, as well as Estrada's son's illness—weigh in favor of transfer. But those factors, even assuming Estrada had made the concrete showings required, do not show that trial here "would be so unduly burdensome that fairness requires the transfer" to Los Angeles. *Posner*, 549 F.Supp. at 477 (quoting *U.S. Steel Corp.*, 233 F.Supp. at 157). Estrada has not shown that the interests of justice require deviation from the "general rule" that "a criminal prosecution should be retained in the original district." *Datta*, 797 F.Supp.2d at 451 (quoting *United States v. Borker*, No. 10 Cr. 1266(RJS), 2011 WL 1630344, at *2 (S.D.N.Y. Apr. 28, 2011)); *Posner*, 549 F.Supp. at 477 (quoting *U.S. Steel Corp.*, 233 F.Supp. at 157).

The Court finds particularly instructive the U.S. Court of Appeals for Second Circuit's decision in *United States v. Stephenson*. *See* 895 F.2d 867, 875 (2d Cir.1990). There, although the defendant had never been present in New York and had only placed telephone calls to New York, the court did not have difficulty finding that, despite "several considerations favoring the District of Columbia as a more convenient forum," the district court had not abused its discretion in denying transfer. *Id.* There, as here, "the residences of a number of Government witnesses and the

location of the prosecutor and the documents . . . relevant to the case against [the defendant] favored holding the trial in the Southern District." *Id.* This Court similarly declines to exercise its discretion to transfer this case to the Central District of California.

Accordingly, Estrada's motion to transfer venue (Dkt. No. 15) is denied.