UNITED STATES of America, Plaintiff,

v.

Robert BOFFA, Sr. and Chandler Lemon, Defendants.

Crim. A. No. 80–36.

United States District Court, D. Delaware.

Feb. 11, 1983.

be held liable for any denial of medical care.

Joseph J. Farnan, Jr., U.S. Atty., Wilmington, Del., Joel M. Friedman, Atty. in Charge, and Ronald G. Cole, Sp. Atty., Philadelphia Strike Force, Philadelphia, Pa., for plaintiff.

Ronald F. Kidd and Michael M. Mustokoff of Duane, Morris & Heckscher, Philadelphia, Pa., for defendant Robert Boffa, Sr.

Thomas A. Bergstrom, Philadelphia, Pa., for defendant Chandler Lemon.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

This criminal action is again before this Court on remand from the Court of Appeals. The action was originally initiated in this Court on July 14, 1980, by the Grand Jury's return of an eleven count indictment against Eugene Boffa, Sr., Francis Sheeran, Louis Kalmar, Sr., Robert Boffa, Sr., Chandler Lemon, David Mishler and Robert Rispo. Before trial, Rispo entered a guilty plea to Count I pursuant to a plea agreement with the Government. Mishler's case was severed from the action and was thereafter dismissed by the Government. Sheeran was tried separately in a later trial and convicted.

Eugene Boffa, Kalmar, Robert Boffa and Lemon were tried before a jury in the original case. Count I charged all the defendants with conspiracy to violate the Racketeer Influenced and Corrupt Organization

Act ("RICO"), 18 U.S.C. § 1962(d). Count II charged all the defendants with a substantive violation of RICO, 18 U.S.C. § 1962(c). Counts V through XI charged Eugene Boffa and Lemon with substantive mail frauds in violation of 18 U.S.C. §§ 1341 & 2.[1]

Eugene Boffa and Chandler Lemon were convicted on the two RICO counts and all seven counts of the substantive mail fraud charges. Kalmar and Robert Boffa were convicted on both RICO counts.

Upon appeal, the Third Circuit affirmed the convictions of Eugene Boffa and Kalmar on the RICO counts that were based on predicate racketeering acts other than mail fraud. However, the Appeals Court reversed the convictions of Lemon and Robert Boffa and remanded their cases for a retrial.

With respect to Lemon, the indictment charged him, as part of the mail fraud scheme, of depriving employees at Inland Container Corporation of: (1) economic benefits enjoyed through rights guaranteed under Section 7 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 157; (2) economic benefits enjoyed under the collective bargaining agreement; and (3) the faithful and honest services of defendant Sheeran in performance of his duties as the elected and salaried president of Local 326 [Teamsters]. With respect to Robert Boffa and Lemon, both were convicted on the RICO substantive and conspiracy counts which were also based on the predicate acts of mail fraud. The indictment charged Robert Boffa with a mail fraud scheme which deprived the employees of Continental Can of: (1) economic benefits guaranteed under Section 7 of the NLRA, and (2) economic rights enjoyed under the collective bargaining agreement. The Court of Appeals held the mail fraud scheme to deprive employees of Section 7 rights under NLRA did not constitute a crime.[2] The Court of Appeals also held, however, that

---

1. Counts III and IV of the indictment charged Sheeran with violating certain criminal provisions of the Taft-Hartley Act, 29 U.S.C. § 186(b)(1) & (d).

2. The convictions of Eugene Boffa on the substantive mail fraud counts were also reversed for the same reasons.

schemes to deprive employees of economic benefits contained in their collective bargaining agreements and schemes to deprive employees of the loyal, faithful and honest services of their union officials did allege crimes under the mail fraud statute. Nevertheless, because the jury may have relied upon the allegations relating to the deprivation of Section 7 NLRA rights in convicting Lemon and Robert Boffa of the mail fraud schemes which formed the basis for the predicate acts of their RICO convictions, the Appeals Court reversed their convictions and remanded for a new trial on the proper and permissible portion of the mail fraud schemes. *United States v. Boffa, et al.,* 688 F.2d 919, 939 (C.A.3, 1982).

In response to the Court of Appeals decision, this Court has set a retrial of Lemon and Robert Boffa. Both Lemon and Robert Boffa have filed a number of pretrial motions which are before the Court for decision.[3]

## I. MOTION TO DISMISS—*Insufficient Evidence*

Both defendants have moved to dismiss the indictment on the grounds of insufficient evidence. The Court finds these motions to be entirely frivolous and totally without merit.

■ The standard to be applied by a trial court in deciding a motion for judgment of acquittal in a criminal case, and the test to be applied by a Court of Appeals in reviewing that decision, are, for all practical purposes, identical. *United States v. Nelson,* 419 F.2d 1237, 1241 (C.A.9, 1969); 8A J. Moore, Moore's Federal Practice ¶ 29.09, at 29–19 (1982 ed.). That standard is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Allard,* 240 F.2d 840 (C.A.3), *cert. denied,* 353 U.S. 939, 77 S.Ct. 814, 1 L.Ed.2d 761 (1957).

■ The evidence and the reasonable inferences adduced from it at the first trial indicated that the defendants had agreed to engage in the activities of the enterprise through a pattern of racketeering activities as alleged in the indictment. The evidence showed beyond a reasonable doubt that there was a unified agreement, shared by all the defendants, to participate in the affairs of the Enterprise through a pattern of racketeering activity. The Enterprise was proved to be a group of individuals associated in fact for the purpose of making money and obtaining other financial benefits through eight corporations that conducted the business of labor leasing and motor vehicle leasing. While the overall master labor leasing scheme was shown to have been implemented at three separate locations and that a different combination of defendants were involved at each particular location, the proof at trial showed that the predicate racketeering acts were directly related to activities of the overall enterprise, and was sufficient for the jury to find beyond a reasonable doubt that the essential elements of the crimes charged had been committed by Robert Boffa and Lemon. *See United States v. Provenzano,* 688 F.2d 194, 199–201 (C.A.3, 1982).

In addition, the mandate of the Court of Appeals with respect to Robert Boffa and Lemon remanded the case to this Court and directed a new trial on the proper portions of the indictment.

It is settled that "[w]hatever was before the appellate court and disposed of by the decree is considered as finally settled and becomes the law of the case. The trial court must carry the decree into execution according to the mandate." *In Re Potts,* 166 U.S. 263, 265, 17 S.Ct. 520, 41 L.Ed. 994 (1897); *In re United States,* 207 F.2d 567, 570 (C.A.5, 1953); 1B J. Moore, Moore's Federal Practice ¶ 0.404[10].

■ Because the mandate clearly states that Robert Boffa and Lemon are to be

---

**3.** Each defendant joined in the motions filed by the other. (Docket Item ["D.I."] 437, pp. 6–8; D.I. 446.)

retried on the charges of the indictment after eliminating all references to Section 7 of the NLRA as providing the basis for criminal liability for the deprivation of an economic benefit to the employees in connection with the mail fraud schemes, this mandate will be carried out accordingly by this Court. Therefore, this Court cannot dismiss the indictments on the grounds of insufficient evidence.

## II. MOTION TO DISMISS—*Double Jeopardy*

Both defendants have moved to dismiss on the ground that the double jeopardy clause of the Fifth Amendment prohibits their retrial after their successful appeal. The Court finds no merit to this contention.

■ The reversal of the judgments of convictions of Robert Boffa and Lemon by the Court of Appeals was not based on insufficient evidence but upon an error of law. It is well settled that where a defendant's conviction is grounded on a legal error in the proceedings, the double jeopardy clause does not preclude a retrial. *United States v. DiFrancesco,* 449 U.S. 117, 131, 101 S.Ct. 426, 434, 66 L.Ed.2d 328 (1980); *Burks v. United States,* 437 U.S. 1, 15, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 26, 98 S.Ct. 2151, 2155, 57 L.Ed.2d 15 (1978); *United States v. Tateo,* 377 U.S. 463, 465, 84 S.Ct. 1587, 1588, 12 L.Ed.2d 448 (1964). Chief Justice Burger summarized the rationale for this constitutional jurisprudence as follows:

> In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e.g.* incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free

from error, just as society maintains a valid concern for insuring that the guilty are punished.

*Burks v. United States, supra,* 437 U.S. at 15, 98 S.Ct. at 2149.

■ Thus, because defendants' convictions were set aside for a legal error in the proceedings and not for insufficiency of evidence, the double jeopardy clause imposes no bar to the retrial of Robert Boffa and Lemon.

Indeed, the instant situation is not unlike that in *United States v. Johnson,* 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966). In that case the defendant, a former Congressman, was convicted on several counts of violating the conflict of interest statute, 18 U.S.C. § 281, and on one count of conspiring to defraud the United States, 18 U.S.C. § 371. The conspiracy charge involved an alleged agreement whereby the defendant and another Congressman would attempt to influence the Justice Department to dismiss pending indictments of a savings and loan company and its officers on mail fraud charges. As a part of the conspiracy, defendant allegedly delivered for pay a speech in Congress favorable to the loan companies. The Government contended and presented proof that the speech was delivered to serve private interests, that defendant was not acting in good faith, and that he did not deliver the speech as a Congressman would ordinarily do. The Court of Appeals dismissed the conspiracy count in its entirety as being barred by Art. I, § 6 of the Constitution, providing that "for any Speech or Debate in either House" Senators and Representatives "shall not be questioned in any other Place" and ordered retrial only on the substantive counts. The Supreme Court agreed that the Speech and Debate Clause precluded prosecution of the defendant Congressman under a general criminal conspiracy statute which would involve inquiry into the content, motivation and circumstances surrounding the Congressional speech. However, the Supreme Court reversed the Court of Appeals in dismissing the entire conspiracy count stating:

The Court of Appeals' opinion can be read as dismissing the conspiracy count in its entirety. The making of the speech, however, was only a part of the conspiracy charge. With all references to this aspect of the conspiracy eliminated, we think the Government should not be precluded from a new trial on this count, thus wholly purged of elements offensive to the Speech or Debate Clause.

383 U.S. at 185, 86 S.Ct. at 757.

Likewise, the Court of Appeals in remanding the instant case ordered that the case be retried after eliminating all references in the mail fraud scheme based on the deprivation of employees' rights under Section 7 of the NLRA. The effect of this ruling was to permit a retrial of Robert Boffa and Lemon purged of the NLRA aspects of the mail fraud violations.

### III. MOTION TO DISMISS—*Need For Re-Indictment*

The defendants contend that the case must be resubmitted to the Grand Jury to determine whether sufficient probable cause exists to return an indictment on the proper portion of the mail fraud schemes. Specifically, the defendants argue that when the Grand Jury returned the indictment against them, it considered evidence regarding the NLRA Section 7 violations which the Court of Appeals subsequently ruled was incompetent. Thus, the defendants aver, that had the Grand Jury known that the defendants' conduct with respect to Section 7 did not constitute a crime, an indictment may not have been returned.

The gist of this contention is that the indicting Grand Jury considered incompetent or impermissible evidence in finding probable cause. There is no merit to this contention. It has repeatedly been stated and is well established that an indictment may not be challenged by a defendant on the ground that evidence before a duly empaneled grand jury was incompetent, inadequate or illegally obtained. *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *United States v. Blue,* 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966); *Lawn v. United States,* 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *United States v. Kenny,* 462 F.2d 1205, 1213 (C.A.3, 1972), *cert. denied,* 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972).

The rationale for this rule was explained in *Costello v. United States, supra,* 350 U.S. at 363, 76 S.Ct. at 408:

If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.

*Id.,* at 363, 76 S.Ct. at 408.

It had been urged in that case that the Supreme Court should "establish a rule permitting defendants to challenge indictments on the ground they were not supported by adequate or competent evidence," *id.* at 364, 76 S.Ct. at 409, but the Court declined this invitation, stating:

It would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules. Neither justice nor the concept of a fair trial requires such a change. In a trial on the merits, defendants are entitled to a strict observance of all the rules designed to bring about a fair verdict. Defendants are not entitled, however, to a rule which would result in interminable delay but add nothing to the assurance of a fair trial.

*Id.*

Consequently, defendants may not challenge the proceedings before the indicting grand jury on the grounds asserted.

## IV. MOTION TO DISMISS—*Multiple Conspiracies*

The defendants, viewing the allegations of the indictment and the evidence adduced at the first trial in a too narrow manner, have again moved to dismiss on the ground that the indictment charges multiple schemes as a single conspiracy, thus violating the strictures enunciated in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). This Court has previously considered this motion in detail in *United States v. Boffa,* 513 F.Supp. 444, 471–75 (D.Del.1980), and found it to be lacking. Furthermore, as discussed in subdivision I above, the evidence viewed in the light most favorable to the Government supported the allegations of a RICO conspiracy. Nothing has occurred since then to cause this Court to hold otherwise. Thus, the Court again finds no merit to this contention.

## V. MOTION TO SUPPRESS OR EXCLUDE EVIDENCE

The defendants have moved the Court to suppress or exclude from evidence at retrial: (1) tape recordings between Charles Allen and Eugene Boffa and between Charles Allen and Francis Sheeran, (2) testimony of witness Travis Dumas, and (3) testimony and evidence relating to all racketeering acts except those in which Robert Boffa or Lemon personally participated.

### A. *The Tape Recordings*

Prior to the original trial, the Court held a *Starks*-type hearing for the purpose of laying a foundation for the tape recordings to be introduced in evidence based on the showing outlined in *United States v. Starks,* 515 F.2d 112, 121 n. 11 (C.A.3, 1975). The hearing on that issue took place on December 9 and 10, 1980 and January 5, 1981 (D.I. 151, at A–1 to A–184; D.I. 152, at B–3 to B–55; D.I. 138, at E–67 to E–190). As a result of those hearings, the Court found that six tapes and transcripts of recorded conversations between Charles Allen and defendant Sheeran, and Allen and defendant Eugene Boffa, were authentic and accurate. (D.I. 180 & 181.) Rulings on relevance and admissibility of the tape recordings under the conspiracy exceptions to the hearsay rule were deferred until trial. (D.I. 181, at 4.)

At trial the defendants urged the Court not to permit the introduction of that evidence. (D.I. 257, at J–68 to J–83.) However, the Court ruled, based on the evidence already admitted to that point, that the recorded conversations of defendants Eugene Boffa and Francis Sheeran with Charles Allen were admissible against each of the named defendants, including Robert Boffa and Lemon, under the co-conspirator's exception to the hearsay rule found in Rule 801(d)(2)(E), Fed.R.Evidence. The Court found that the Government had proved by a preponderance of the evidence, independent of the hearsay statements, that the RICO conspiracy charged in their indictment existed, that the defendants were members of that conspiracy, and that the statements were made during the pendency of, and in furtherance of, the conspiracy. Because of that finding, the tape recorded conversations were admitted against each of the defendants without special instructions. (D.I. 257, pp. J–84 to J–86.) *United States v. Trowery,* 542 F.2d 623, 627–28 (C.A.3, 1976).

 The Court finds no reason to refuse to follow the original ruling provided the Government evidence follows the pattern of the first trial.

### B. *Testimony of Travis Dumas*

The testimony of Travis Dumas was offered in the first trial and it showed that Robert Boffa approached Dumas, a Florida Teamster officer, and attempted to recruit him into the Enterprise. The methods employed by Robert Boffa were similar to the methods used in the Delaware transactions. The common scheme was to have a local labor official control the local union to facilitate the expansion of business of the labor leasing companies conducted through named corporations under the control of the Enterprise. Robert Boffa outlined to Dumas the operation of the Enterprise, includ-

ing supplying the free use of an automobile and offering to give him a car later if he cooperated in the conduct of the affairs of the Enterprise. (D.I. 256, at H–4 to H–46.) The defendants at trial objected to this testimony on the grounds that it was barred by Rule 404(b), Fed.R.Evidence. The Court overruled defendants' objection (D.I. 297, at F–28 to F–31), and held that the evidence was highly relevant and probative of the issues of intent, mode or plan of operation of the Enterprise and the absence of mistake or accident. The same ruling will apply at the retrial of such proffered evidence.

■ The defendants, however, now advance a second reason for excluding Dumas' testimony at the retrial. They argue that the doctrine of collateral estoppel bars the introduction of Dumas' testimony. In this respect, the defendants contend that since the first jury found that Robert Boffa did not have to forfeit his alleged interests in Country Wide Personnel companies operating in Florida, and UCI, this precludes the Government from presenting such evidence at the retrial. This argument, however, is too broad. The fact that the jury did not find beyond a reasonable doubt that Robert Boffa exercised sufficient control and ownership of Universal Coordinators and Country Wide Personnel so as to warrant forfeiture of his interests in those companies does not indicate that the jury did not accept Dumas' testimony for purposes of showing intent, the overall method of conducting the Enterprise, and the absence of mistake or accident because he was convicted on the substantive and conspiracy counts of RICO. The Court, accordingly, does not find that Dumas' testimony is barred by collateral estoppel.

### C. *Collateral Estoppel*

■ Finally, the defendants have moved to exclude the testimony and evidence re-

lating to all racketeering acts which the first jury found were not committed by defendants Eugene Boffa and Kalmar under the doctrine of non-mutual collateral estoppel. This Court is convinced that this doctrine is not applicable to Robert Boffa or Lemon on the authority of *Standefer v. United States,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980). In that case a defendant was charged with aiding and abetting an internal revenue official (the principal) in taking a bribe. With respect to one of the bribes, the principal who was tried first was acquitted (but was convicted for other bribes). Standefer (the aider and abettor) argued that because the principal was previously acquitted of one of the bribes, he could not be tried for aiding and abetting that bribe. The Supreme Court rejected that contention. The Court held that the fate of other criminal defendants were irrelevant to the defendant. That rationale applies here. Thus, the findings of the first jury that Eugene Boffa and Kalmar did not commit certain racketeering acts did not constitute a finding of acquittal in favor of Robert Boffa[4] or Lemon. Accordingly, the Court finds no merit to this argument.

## VI. MOTION TO CHANGE VENUE

Defendant Lemon has moved to change venue to the United States District Court for the Eastern District of Pennsylvania. (D.I. 430.) Robert Boffa has moved to change venue to the United States District Court for New Jersey, sitting in Newark.[5]

■ Both defendants seek a change of venue under Federal Rule of Criminal Procedure 21(a). They contend that, because of prior publicity, they cannot obtain a fair trial in this district. They assert that the publicity concerning the two prior trials

---

4. The Court notes from the special interrogatories of the first jury, that Robert Boffa was found not to have committed Racketeering Acts 54 through 57, and that the Government in the retrial does not intend to have the new jury consider those racketeering acts. (D.I. 445, p. 3.)

5. To confuse matters Lemon and Robert Boffa joined in each other's motion to change venue (D.I. 437, p. 3 ¶ 13; D.I. 446).

of this case and the fact that Francis Sheeran, a named co-defendant, was also tried in a subsequent state court case, make it impossible to obtain an impartial jury for the retrial. The Court does not believe this to be so. Impartial jurors were obtained for the two previous trials and there is no reason to believe this cannot be again accomplished. In any event, the matter of whether a "fair and impartial" retrial may be held in this district should await the *voir dire* examination of prospective jurors. *United States v. Addonizio,* 313 F.Supp. 486, 493–94 (D.N.J.1970), *aff'd,* 451 F.2d 49 (C.A.3, 1972), *cert. denied,* 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972); *United States v. Sinclair,* 424 F.Supp. 719, 721 (D.Del.1976). Accordingly, the motions to change venue for prejudice will be denied.

■ Robert Boffa also contends that under Art. III, Sec. 2, Clause 3, and the Sixth Amendment, he has an absolute constitutional right to be tried where his alleged criminal acts took place and none occurred in Delaware. This argument is groundless. Robert Boffa is charged in the indictment with RICO conspiracy, viz., agreeing to participate directly and indirectly, in the conduct of the affairs of an enterprise engaged in interstate commerce, through a pattern of racketeering activity and also with substantive violations of RICO. There is no question that two of the three specific schemes involved in the overall conspiracy occurred in Delaware and some of the racketeering acts alleged occurred in a number of other states. The indictment charges Robert Boffa with a sufficient number of acts committed in Delaware as a result of the overall conspiracy to permit the retrial to take place here.

■ Finally, Robert Boffa contends that venue should be changed under Federal Rule of Criminal Procedure 21(b), for the convenience of parties, witnesses and the interest of justice. After considering the factors set forth in *Platt v. Minnesota Mining & Manufacturing Co.,* 376 U.S. 240, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964), and the arguments made by Robert Boffa, the Court is satisfied that the retrial should occur in this district. To be sure, some inconvenience, regardless of where the retrial is held, will burden one or more of the parties. The distance from which Robert Boffa's reputation witnesses will have to travel is not so great that an undue burden would be placed upon them. No such showing was made at the first trial and none has been made here. The defendant has not affirmatively convinced this Court of such burdensome inconvenience as to justify a change in venue. *See United States v. Winter,* 663 F.2d 1120, 1149–50 (C.A.1, 1981). Indeed, these transfer motions appear to be a disguised effort to obtain a severance.

## VII. MOTION FOR SEVERANCE

■ Both defendants have again moved for a severance under Federal Rules of Criminal Procedure 8(b) and 14. These motions were before the Court prior to the first trial and were denied for the reasons appearing in *United States v. Boffa,* 513 F.Supp. 444, 485–88, 471–75 (D.Del.1980). The refusal to grant the severance motion was placed in issue before the Court of Appeals. (Lemon's Appeal Brief, at 39–41; R. Boffa's Appeal Brief 1.) While the Court of Appeals did not expressly refer to the severance arguments, it did not reverse on that issue and specifically ordered the case be remanded to this Court for retrial. This Court considers this issue foreclosed by the prior appeal and the severance motion will be denied.

## VIII. MOTION TO DISMISS—*Grand Jury Abuse*

Defendant Lemon has moved to dismiss the complaint on the ground of grand jury abuse. (D.I. 432; D.I. 435, at 16–17.) Robert Boffa has joined in that motion. (D.I. 437, at 33.) This contention is based on the fact that after co-defendant Eugene Boffa was convicted in the first trial, but before the Court of Appeals decision, Eugene Boffa was given immunity and was subpoenaed to appear before a grand jury in Delaware and gave testimony. The argument proceeds:

This immunity order was sought by Ronald Cole, Esq.; it was Mr. Cole who then questioned Mr. [Eugene] Boffa before the grand jury. It is believed and therefore averred that the government utilized the grand jury to shore up its case on retrial against defendant Lemon. It is believed and averred that the government intends to utilize the testimony (directly or indirectly) provided by Mr. [Eugene] Boffa during his grand jury appearance at Lemon's retrial.

DX 435, at 17.

█ The Court finds no merit to this motion and it will be denied. First, the Government attorney has represented that the evidence to be introduced at the retrial of Lemon and Robert Boffa will be no more and no less than that which was introduced during the first trial and that the evidence to be introduced at retrial will clearly demonstrate that no additional testimony will have been directly or indirectly derived from Eugene Boffa's grand jury testimony. This alone is sufficient to deny the motion.

Second, Lemon's allegations are not based on any factual showing of grand jury abuse but is simply based on speculation and suspicion. "In the absence of a contrary factual showing, the grand jury proceedings are entitled to a presumption of lawfulness and regularity." *United States v. Johanson,* 632 F.2d 1033, 1041 (C.A.3, 1980) (citing *In re Grand Jury Proceedings* (Schofield I), 486 F.2d 85, 92 (C.A.3, 1973)).

█ Third, while it is true that a grand jury may not investigate Lemon or Robert Boffa on the pending charges to be retried, the grand jury may make a good faith inquiry into other charges within the scope of the grand jury's lawful authority even if it uncovers further evidence against an indicted person. *United States v. Johanson, supra,* at 1041; *United States v. Woods,* 544 F.2d 242, 250 (C.A.6, 1975).

## IX. MOTION FOR DISCOVERY

### A. *Immunized Grand Jury Testimony*

█ Lemon has moved for an order requiring the Government to produce a copy of Eugene Boffa's immunized grand jury testimony which he gave after he was convicted in this case. Robert Boffa has joined that motion. (D.I. 433; D.I. 437, at 6 & 33.) This motion will be denied for the reasons stated in subdivision VIII above. The defendants have not presented a sufficient factual basis for lifting the veil of secrecy surrounding the later grand jury proceedings. *See United States v. Boffa,* 513 F.Supp. 444, 493–96 (D.Del.1980).

### B. *Grand Jury Attendance Records*

Robert Boffa has again moved for an order requiring the Government to produce the ministerial and attendance records of the Grand Jury which investigated and voted the indictment returned in this case on July 14, 1980. (D.I. 437, at 4–5, 34–38.) Lemon joins this motion. (D.I. 446.) The same motions supported by the same arguments were presented to and fully considered by this Court prior to the first trial and were denied for the reasons set forth in detail in *United States v. Boffa,* 513 F.Supp. 444, 497–98 (D.Del.1980). Defendants did not pursue this issue on appeal. No reason has been advanced for this Court to change its prior decision. *United States v. Provenzano,* 688 F.2d 194 (C.A.3, 1982), which the defendants rely upon for support, does not require a holding otherwise.

## X. MOTION FOR INDIVIDUAL VOIR DIRE

Both defendants have moved for individual voir dire of the jury. (D.I. 434; D.I. 437, at 8.) This motion as hereinafter explained will be granted. The voir dire to the jury shall be conducted by the Court in two phases. First, a general *voir dire* to the panel as a group shall be conducted. Second, an individual voir dire will be directed to each randomly selected member of the panel out of the hearing of the other panel members.

The questions to be asked and the procedure to be followed in the retrial will substantially track the questions and procedures followed in the two prior jury trials of this case. *See United States v. Starks,* 515 F.2d 112, 125 (C.A.3, 1975).

Counsel for all the parties were advised of this procedure and the questions to be asked on December 17, 1982, by Retrial Order No. 2 (D.I. 436). They were given the opportunity to take exceptions by filing and serving specific objections by January 5, 1983. Since no exceptions were filed, the above procedure will be followed and the questions outlined will be asked at the retrial of Robert Boffa and Lemon.

An order will be entered in accordance with this opinion.