UNITED STATES of America, Plaintiff,

v.

Arthur R. WECKER, Arnold Katz, MZL Chemical Inc., Velco Enterprises Ltd., Kerr & Sykes Ltd., Defendants.

Crim. A. No. 85–33 MMS.

United States District Court, D. Delaware.

Oct. 9, 1985.

Richard J. McMahon, Asst. U.S. Atty., Wilmington, Del., for U.S.

David J. Stein, New York City, for defendant Arthur W. Wecker.

Ira E. Garr, Barrison & Garr, New York City, for defendant Arnold Katz.

Howard Mulholland, New York City, for defendant MZL Chemical, Inc.

Richard Berne, New York City, for defendants Velco Enterprises, Ltd. and Kerr & Sykes, Ltd.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

The defendants in this case were indicted by a federal grand jury on June 11, 1985 on seventeen counts of wire fraud and one count of mail fraud. 18 U.S.C. §§ 1341, 1343, & 2. The case is presently before the Court on three motions raised by defendants: to transfer the proceedings; to strike surplusage from the indictment; and to dismiss the indictment.[1]

For the reasons discussed below, the motions are denied.

### Factual Background

Hercules, Inc. (Hercules) is incorporated and headquartered in Delaware and engaged in the manufacture and distribution of industrial chemicals and related products. Among the chemical products manufactured by Hercules are pentaerythritol and nitrocellulose. Defendants MZL Chemical Inc. (MZL), Velco Enterprises Ltd. (Velco), and Kerr & Sykes Ltd. (Kerr & Sykes) are New York corporations with their principal place of business in Elmsford, New York. Defendant Arthur Wecker is an officer of and conducted business under the name MZL Chemical Inc. Defendant Arnold Katz is an officer of and

1. Defendants also had moved the Court pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure for an order directing the government to file a bill of particulars. The motion was withdrawn at oral argument in light of the government having filed an adequate response to the motion.

conducted business under the names of the other two corporate defendants.

The indictment alleges that MZL purchased pentaerythritol from Hercules at a reduced price[2] on the basis of Wecker's false representations that the product was to be resold in Iran.[3] Velco and Kerr & Sykes allegedly purchased the pentaerythritol from MZL, in order to conceal the scheme to defraud, and then resold it to domestic customers. The indictment further alleges that Wecker, on behalf of MZL, later made similar misrepresentations as part of a similar scheme involving nitrocellulose. Although no nitrocellulose was actually sold to MZL, the indictment alleges that Wecker had made arrangements to resell the nitrocellulose to two domestic customers through a third party.

The eighteen counts of the indictment correspond to separate communications by telegram, telephone, and mail between defendants and Hercules in furtherance of defendants' alleged scheme.

### Motion to Transfer

■ Defendants have moved the Court pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure to transfer this case to the Southern District of New York.[4]

Rule 21(b) reads:

For the convenience of parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to him or any one or more of the counts thereof to another district.

Fed.R.Crim.P. 21(b).

■ As a general rule, criminal prosecutions should be retained in the original district. *United States v. United States Steel Corp.*, 233 F.Supp. 154, 157 (S.D.N.Y.1964).

[S]ound judicial administration and the need for efficient handling of the prosecuting attorney's work load suggest that only rarely and for good cause should a prosecution be withdrawn by a judicial act from the court in which it was brought and probably from the direction and management of counsel who have prepared it.... This is especially true where, as here, government counsel has carried it before the Grand Jury.

*United States v. Jones,* 43 F.R.D. 511, 514 (D.D.C.1967) (citations omitted).

■ The trial court has broad discretion in this matter. *United States v. Green,* 373 F.Supp. 149, 153 (E.D.Pa.) (citing cases), *aff'd,* 505 F.2d 731 (3d Cir.1974), *cert. denied,* 420 U.S. 978, 95 S.Ct. 1405, 43 L.Ed.2d 659 (1975). Any trial will result in some inconvenience to the parties, but mere inconvenience does not mean that a transfer is required in the interest of justice. *United States Steel Corp.,* 233 F.Supp. at 157. The defendants here must show substantial inconvenience or their motion will be denied. *See id.; United States*

---

**2.** The government's answering brief states that Hercules sold pentaerythritol to defendants at approximately 47¢ per pound rather than at the "prevailing market price" of approximately 54¢ per pound or list price of 71¢ per pound.

**3.** The parties dispute the rationale behind the price reduction. Defendants claim that Hercules, along with the three other major producers of pentaerythritol, maintained for it two sets of prices—a domestic price and a lower price for exports. Defendants' Motion and Memorandum in Support of Dismissal of Indictment at 3–4. The government denies the existence of a two-tier pricing policy. Government's Answering Brief on Defendants' Motion at vii–ix. Rather, the government states that Hercules sold its products to defendants at a lower price because defendants represented that they would resell the products in Iran, which would be a new market for Hercules' products. *Id.* at vii.

**4.** Rule 18 of the Federal Rules of Criminal Procedure is tangentially involved. It provides:

Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed. The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice.

Fed.R.Crim.P. 18. The Constitution likewise requires that a criminal prosecution take place in the state and district where the crime was committed. U.S. Const. art. III, § 2 and amend VI.

Because the wire fraud and mail fraud alleged in this case are "continuing offenses," they may be prosecuted in either Delaware or New York. *See* 18 U.S.C. § 3237(a).

*v. Boffa,* 557 F.Supp. 306, 315 (D.Del.), *aff'd,* 723 F.2d 899 (3d Cir.1983), *cert. denied,* 465 U.S. 1066, 104 S.Ct. 1415, 79 L.Ed.2d 741 (1984); *Greene,* 373 F.Supp. at 154.

The Supreme Court has outlined the factors now generally considered in deciding whether to grant a motion to transfer under Rule 21(b). *See Platt v. Minnesota Mining & Manufacturing,* 376 U.S. 240, 243–44, 84 S.Ct. 769, 771, 11 L.Ed.2d 674 (1964); *United States v. Haley,* 504 F.Supp. 1124 (E.D.Pa.1982). The factors are: (1) location of corporate defendant; (2) location of possible witnesses; (3) location of events likely to be an issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer. *Platt,* 376 U.S. at 243–44, 84 S.Ct. at 771.

The Court agrees with defendants that the *Platt* factors should be considered cumulatively, and that in this case the factors weigh in favor of the New York forum. The corporate defendants are incorporated and headquartered in New York. Wecker lives with his wife in New York; Katz lives with his wife and children in Connecticut. Many of the witnesses, including Michel Goldschneider, the unindicted president of Velco and vice-president of Kerr & Sykes, would find a New York forum more convenient and accessible. Trial in Delaware would yield a somewhat greater disruption of defendants' businesses, and cause them to incur greater costs.

While the factors may weigh in favor of the New York forum, they fail to weigh heavily enough to warrant granting defendants' motion to transfer. Defendants have failed to satisfy the Court that they would suffer substantial inconvenience if the case is tried in Delaware.

As noted by the government, Wilmington is quickly and easily accessible from New York and other points by air, train, or highway. *See United States v. Bloom,* 78 F.R.D. 591, 610 (E.D.Pa.1981) ("Philadelphia, served by railroads and major arteries is an accessible location, even for the Florida defendants"); *U.S. Steel,* 233 F.Supp. at 157–58 ("excellent air and rail service" between Pittsburgh and New York). The distance between Wilmington and New York is not great. *Cf. United States v. Haley,* 504 F.Supp. 1124 (E.D.Pa.1981) (granting transfer of indigent defendants' case from Philadelphia to Georgia); *United States v. Aronoff,* 463 F.Supp. 454 (S.D.N.Y.1978) (granting transfer from New York to Detroit); *United States v. Alter,* 81 F.R.D. 524 (S.D.N.Y.1979) (granting transfer from New York to Miami).

There is no indication that witnesses will be unable to testify if the trial is held in Delaware rather than New York.[5] *Cf. Haley,* 504 F.Supp. 1124 (transfer of indigent's case where a number of defense witnesses would not testify otherwise). Nor have defendants demonstrated that they are unable to bear the additional expenses associated with a Delaware forum. *See United States v. Luros,* 243 F.Supp. 160, 175 (N.D.Iowa), *cert. denied sub nom., Luros v. Hanson,* 382 U.S. 956, 86 S.Ct. 433, 15 L.Ed.2d 361 (1965) (ability to bear expense, not its size, is relevant). The government's witnesses from Wilmington, Baltimore, and Philadelphia, moreover, would likely find Wilmington more convenient. Finally the sole victim of the alleged fraud, Hercules, is headquartered in Wilmington. *Cf. Alter,* 81 F.R.D. 524 (granting transfer where "nerve center" of telephone fraud operation in Miami, most witnesses there, and victims and other witnesses dispersed in many states).

Defendants' assertion that their businesses would be "destroyed" by a trial in Delaware is highly speculative. Mr. Goldschneider has testified that he "controls the operations" of Velco and Kerr &

---

5. Counsel for defendants at oral argument conceded that an assertion in their brief, that a Delaware forum would "prevent" them from presenting key witnesses, was overstated.

Sykes and "owns, operates and supervises" MZL.[6] Presumably he could assume more complete responsibilities at these firms during the trial and consult with Wecker and Katz while court is adjourned; operations could be temporarily suspended while Goldschneider must be in court. In short, some disruption of business activities is inherent in the criminal prosecution of a company and its officers; the disruption in this case is not dispositive.

For the foregoing reasons, defendants' motion to transfer will be denied.

### Motion to Strike Surplusage

Defendants have moved the Court pursuant to Rule 7(d) of the Federal Rules of Criminal Procedure for an order striking portions of the indictment as surplusage. The items to which defendants object in Items 1–4 include references to the number of orders placed by Wecker with Hercules as "numerous"; to the quantities purchased as "large"; and to the price as "substantially" reduced. They also ask the Court in Items 6–10 to strike paragraphs alleging that Katz, under an alias, and Wecker met with Hercules representatives in New York in furtherance of the scheme; that Velco and Kerr & Sykes purchased Hercules pentaerythritol from MZL in order to conceal the scheme; that Velco and Kerr & Sykes resold the pentaerythritol in the United States; that Wecker had made arrangements to resell Hercules nitrocellulose to domestic customers while representing to Hercules that he would export it to Iran; and that Katz, under an alias, and Wecker met again with Hercules representatives and produced a false bill of lading to evidence shipment overseas.[7]

The standard for striking surplusage from an indictment is not easily met.

It is held that a motion to strike surplusage should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. This is a rather exacting standard and only rarely has surplusage been ordered stricken.

*United States v. Fischbach and Moore, Inc.,* 576 F.Supp. 1384, 1398 (W.D.Pa.1983) (quoting C. Wright, *Federal Practice and Procedure: Criminal 2d* § 127, at 426–27 (1982)); *United States v. DePalma,* 461 F.Supp. 778, 797 (S.D.N.Y.1978). *See also* Fed.R.Crim.P. 7(d) advisory committee note ("a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial").

Defendants have failed to establish any of the language of the indictment should be stricken as surplusage. The descriptive words listed in Items 1–4, while not essential to the charges, are certainly in a general sense relevant to the overall scheme which is charged in the indictment. They may be more specifically relevant, for example, in showing the purpose behind the alleged scheme. *See United States v. Krasnoff,* 480 F.Supp. 723, 730 (S.D.N.Y. 1979) ("massive amounts" description is an "integral" part of the criminal activity charged which, if proven, may indicate purpose).

Contrary to defendants' assertion, the terms will not lead a jury to speculate as to the nature, extent, or scope of the transactions involved in this case.[8] *Cf. United States v. Mandel,* 415 F.Supp. 997, 1009

---

6. Grand Jury Testimony of Michel Goldschneider at 5–7, *reprinted in* Appendix to Government's Answering Brief on Defendants' Motions at A–1 to A–3.

7. Item 5 of defendants' motion asks the Court to strike a sentence in the indictment regarding the intent and effect of defendants' misrepresentations. In their brief, defendants state that they had requested clarification of the sentence in their motion for a bill of particulars, and add that in the absence of clarification the sentence should be stricken. The Court notes that de-

fendants have accepted the government's response to the motion for a bill of particulars, and will treat Item 5 as withdrawn.

8. The defendants cite *Dranow v. United States,* 307 F.2d 545, 558 (8th Cir.1962), as direct support for their argument here. The case, while dealing with the issue of striking surplusage, does not support the assertion for which it is cited. Jury speculation is nowhere mentioned in the opinion, and the court rejected the motion to strike surplusage.

(D.Md.1976) (reference to Maryland Code of Ethics stricken as surplusage where indictment incorrectly implied that violation of Code by governor establishes fraud on citizens and could confuse jurors on the issue); *DePalma*, 461 F.Supp. at 799 (striking "and other activities" from charging paragraph of indictment, as the broad allegation "adds nothing to the charges, gives the defendant no further information with respect to them, and creates the danger that the prosecutor at trial may impermissibly enlarge the charges contained in the [racketeering] Indictment returned by the grand jury."). The concerns expressed in *Mandel* and *DePalma* do not apply to the items at issue in this case.

Even if Items 1–4 were not relevant to the charges, the words complained of are not inflammatory or unduly prejudicial. *Cf. United States v. Kemper*, 503 F.2d 327, 329–30 (6th Cir.1974), *cert. denied*, 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 824 (1975). The motion is therefore denied with respect to Items 1–4.

 The material contained in Items 6–10 likewise survives defendants' motion to strike as surplusage. Each of the paragraphs is highly relevant to the fraud alleged in the indictment. Allegations of matters which the government in good faith intends to prove at trial to establish the charge cannot be stricken as surplusage. *See United States v. Lavin*, 504 F.Supp. 1356, 1362 (N.D.Ill.1981) (striking reference to "over two thousand" cases of corruption where government clearly would not attempt to prove that number); *United States v. Climatemp, Inc.*, 482 F.Supp. 376 (N.D.Ill.1979), *aff'd sub nom.*, *United States v. Reliable Sheet Metal Works, Inc.*, 705 F.2d 461 (7th Cir.), *cert. denied sub nom.*, *Fakter v. United States*, 462 U.S. 1134, 103 S.Ct. 3116, 77 L.Ed.2d 1370 (1983) (refusing to strike background information about industry, phrases "among other things" and "among others"

with regard to overt acts and effects of conspiracy in non-charging paragraph, and references to effects of the combination and conspiracy charges); *United States v. Chas. Pfizer & Co.*, 217 F.Supp. 199, 201 (S.D.N.Y.1963) (refusing to strike allegations of "unreasonably high prices" and "unreasonably high profits" from indictment charging only agreement to sell "at substantially identical and non-competitive prices"), *rev'd on other grounds*, 426 F.2d 32 (2d Cir.1970).

Defendants cite no persuasive authority for striking as surplusage any portion of the indictment in this case. The motion to strike surplusage will be denied.

### Motion to Dismiss

Defendants have moved the Court pursuant to Rule 12 of the Federal Rules of Criminal Procedure to dismiss the indictment as failing to charge a criminal offense. They raise three arguments. First, the transactions cannot form the basis of a mail-fraud and wire-fraud prosecution because the restraint imposed by Hercules violates the Sherman Act, 15 U.S.C. § 1, *et seq.*, and as such is illegal and unenforceable. Second, because defendants reasonably believed their failure to adhere to the allegedly illegal restraint did not violate federal law and in fact comported with common business practice, they lacked the requisite specific intent to defraud. Third, the government cannot show the defendants harmed or contemplated harm to Hercules, a prerequisite for the fraud offense.[9]

 The mail-fraud and wire-fraud statutes proscribe a broad range of activity. *United States v. Frankel*, 721 F.2d 917, 918, 921 (3d Cir.1983) (mail fraud and wire fraud); *United States v. Giovengo*, 637 F.2d 941, 944 (3d Cir.1980), *cert. denied sub nom.*, *Paladino v. United States*, 450 U.S. 1032, 101 S.Ct. 1743, 68 L.Ed.2d 228 (1981) (wire fraud; construing §§ 1341 and 1343 in *pari materia* regarding scope). *See also McLendon v. Continental Group*,

---

9. This third argument was not raised in the defendants' motion and appears only in their Reply Memorandum. *See* Reply Memorandum at 10–14. Objections that the indictment fails to charge an offense must be noticed by the Court at any time during the pendency of the proceeding. Fed.R.Crim.P. 12(b)(2).

*Inc.,* 602 F.Supp. 1492, 1506, 1508–09 (D.N.J.1985) (citing examples). The essential elements of an offense under 18 U.S.C. §§ 1341 or 1343 are: (1) the existence of a scheme to defraud; (2) the use of the mails or wires in furtherance of such scheme; and (3) culpable participation by the defendant. *United States v. Pearlstein,* 576 F.2d 531 (3d Cir.1978) (§ 1343); *McLendon,* 602 F.Supp. at 1506–07 (§§ 1341 and 1343).[10]

Defendants do not claim that the government has failed to allege any of the essential elements of the offenses. Instead, each of their three arguments for dismissal actually raises a defense to the indictment. Each of these defenses, moreover, is contingent upon certain assumptions of fact. In effect, defendants are asking the Court to determine, on the pleadings and briefs, that Hercules violated the antitrust laws, that defendants lacked criminal intent, and/or that no harm to Hercules was even contemplated in the alleged scheme.[11]

■ Dismissal of the indictment on any of these bases would be inappropriate. Rule 12 pretrial motions are limited to those "capable of determination without the trial of the general issue." Fed.R. Crim.P. 12(b). *See United States v. Knox,* 396 U.S. 77, 83 & n. 7, 90 S.Ct. 363, 367 & n. 7, 24 L.Ed.2d 275 (1969) (coercive effect of statute should not be determined on motion to dismiss); *United States v. Snyder,* 428 F.2d 520 (9th Cir.1970), *cert. denied,* 400 U.S. 903, 91 S.Ct. 139, 27 L.Ed.2d 139 (1970) (motion to dismiss is not proper way to raise a defense).

Defendants' motion does, however, raise several issues that should be resolved before trial begins. Perhaps most important of these is the relevance of the alleged antitrust violation by Hercules to the mail-fraud and wire-fraud offenses with which defendants are charged. *Compare United States v. Weinstein,* 762 F.2d 1522 (11th Cir.1985) (rejecting antitrust defense in fraud prosecution), *with United States v. Boxer,* No. 72 Crim. 462 (S.D.N.Y. Mar. 27, 1973) (unpublished transcript) (ordering judgment of acquittal).

Therefore, the Court will this day order a pretrial hearing at which defendants will have the opportunity to make proffers of proof on the two antitrust-related defenses raised by the motion to dismiss: (1) that a violation occurred and excuses defendants' conduct; and (2) that even absent an actual violation, defendants' good-faith belief that a violation occurred excuses their conduct. The Court will hear arguments from each party concerning the admissibility of the evidence at trial, and will then rule on the admissibility questions as expeditiously as possible.

An early resolution of these issues will allow each party to better plan its case and select and obtain witnesses. They will know whether they need, in effect, to prepare an antitrust case within a fraud case. An expedited clarification of the issues involved and scope of the trial will also enable defendants to better adjust their business schedules, the prosecution to better allocate its resources, and the Court to better administer the case.

### Conclusion

Defendants' motions to transfer the case, to strike surplusage, and to dismiss the indictment will be denied. The Court will schedule a hearing to consider evidentiary issues raised by defendants' motion to dismiss.

---

10. The scheme to defraud falls within the scope of the statutes even absent a false representation. *Frankel,* 721 F.2d at 921. The loss suffered by the victim of the fraud need not be tangible or economic. *See United States v. Clapps,* 732 F.2d 1148 (3d Cir.1980), *cert. denied,* — U.S. ——, 105 S.Ct. 589, 83 L.Ed.2d 699 (1984) (vote-fraud scheme); *United States v. Boffa,* 688 F.2d 919, 931 (3d Cir.1982), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 494 (1983) (scheme to defraud employees of loyal services of union official). *But see Boffa,*

688 F.2d at 986 (no mail-fraud prosecution for deprivation of NLRA rights, because contrary to congressional intent).

11. In their separately-filed motion for a continuance, defendants restate their arguments and contend that "[e]ach of these legal issues necessarily involves complex and broad ranging factual questions relating to the petrochemical industry."