UNITED STATES of America,

v.

Joseph RUSSELL, and Yo Anne Thompson Russell, Defendants.

No. 83 Cr. 741 (GLG).

United States District Court,
S.D. New York.

March 13, 1984.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City for the U.S.; Michael S. Feldberg, Asst. U.S. Atty., New York City, of counsel.

Glankler, Brown, Gilliland, Chase, Robinson & Raines, Memphis, Tenn., for defendant Joseph Russell; Frank J. Glankler, Jr., J.N. Raines, G. Coble Caperton, Memphis, Tenn., of counsel.

Rickey, Klein, Yawn, Bourland & Smith, Memphis, Tenn., for defendant Yo Anne Thompson Russell; Henry L. Klein, Memphis, Tenn., of counsel.

## OPINION

GOETTEL, District Judge.

The defendants, Joseph Russell and Yo Anne Thompson Russell, a married couple, move to transfer this prosecution to the Western District of Tennessee, which includes the city of Memphis, where both Russells reside and where Mr. Russell maintains his business.

The Russells are charged in the indictment with participating in frauds committed on the international shipping industry. The indictment alleges that freight paid by an agency of the People's Republic of China to charter ships owned by individuals in New York, Europe, and Asia were misappropriated and diverted first to banks in New York, then to the Bahamas, and finally to the Russells in Memphis, Tennessee. The sums involved were substantial.

In addition to the Russells, two other named, but unindicted, co-conspirators were allegedly involved in the fraudulent scheme that is the subject of this prosecution. One is Kaare Gilboe, Jr., a ship broker with offices in Hong Kong and Tokyo, and the other is a certain Richard Cunningham, who has also lived in various parts of the Orient. Two years ago, Gilboe, an alien with no permanent residence in the United States, was tried for his participation in the scheme. His trial was conducted in this district, and the Government is, of course, quite interested in having the same team that prosecuted him try the instant case. The Court notes, however, that, while the actions of Gilboe were apparently a necessary part of the overall scheme alleged against the Russells, their names were never mentioned during the Gilboe trial, no evidence was introduced to directly connect them to the scheme, and they now contend that they had no contact with, or knowledge of, any of the Government witnesses who testified in that case.

■ Turning to this case, it should be noted initially that the defendants apparently concede that the Court may properly fix this district as the place of trial.[1] The allegations that certain telephone and telex messages were either sent from or received in New York City and that funds passed through New York on the way to the Bahamas are enough to establish venue in this

---

1. Although the Russells originally argued that venue did not lie in this district, they have since abandoned that argument. In any event, the same argument was rejected in *United States v.* *Gilboe,* 684 F.2d 235, 239–40 (2d Cir.1982), *cert. denied,* 459 U.S. 1201, 103 S.Ct. 1185, 75 L.Ed.2d 432 (1983).

district, even though there is no allegation that either of the Russells did anything in New York in connection with the scheme.

■ The defendants, however, seek to transfer the action pursuant to Fed.R. Crim.P. 21(b), which provides for the transfer of prosecutions for the convenience of the parties and witnesses and in the interests of justice. Although the Government opposes the motion to transfer, it does not dispute the Court's broad discretion under Rule 21(b) to transfer this case to another district. Nor does the Government dispute the fact that the Western District of Tennessee, Memphis Division, would have been a proper place in which to commence this prosecution. In addition, both sides agree as to what the controlling considerations should be in determining whether the requested transfer should be granted, namely those set forth in *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964), which include: (1) location of defendant; (2) location of witnesses; (3) location of events in issue; (4) location of documents; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; and (8) relative accessibility of place of trial.[2] *Id.* at 243–44, 84 S.Ct. at 771.

■ The first of these factors, the location of the defendants, clearly favors the transfer of these proceedings to Memphis. Unquestionably, it can be a hardship for defendants to stand trial far away from home. As a matter of policy, therefore, wherever possible, defendants should be tried where they reside. *United States v. Aronoff,* 463 F.Supp. 454, 457 (S.D.N.Y. 1978) (citing *Hyde v. Shine,* 199 U.S. 62, 78, 25 S.Ct. 760, 762, 50 L.Ed. 90 (1905), and *United States v. Cashin,* 281 F.2d 669, 675 (2d Cir.1960)).[3] Here, the Russells, as well as their three college-aged children, live together in Memphis, a fact which argues strongly for the transfer of the case to that city.

The second factor, the location of witnesses, also weighs in favor of transfer. While the Government will call a few witnesses from the New York Metropolitan area,[4] the great majority of its witnesses will come from abroad, primarily the Orient. The Russells, on the other hand, will be relying upon a large number of witnesses from Memphis. A list of 23 witnesses, who allegedly are familiar with the Russells' business activities and will testify with regard to their various financial transactions, has been submitted to the Court *in camera.* Even if the list is viewed with reasonable skepticism, it still demonstrates that the Russells will call more factual witnesses from Memphis than the Government will from New York. Although the Government may have to call many of the witnesses who testified in the *Gilboe* trial, it must prove much more than it did there in order to win the conviction of the Russells here. Indeed, the Russells indicate that they will not attempt to exonerate Gilboe or contest his criminal involvement. The essence of their defense will be that

---

**2.** The Supreme Court drew this list of factors from the dissent to the lower court's decision, which was reversed. *See Minnesota Mining and Manufacturing Co. v. Platt,* 314 F.2d 369, 376–77 (7th Cir.1963) (Hastings, C.J., dissenting). While not specifically adopting these factors, the Court implicitly approved them in *Platt,* and courts have consistently used them ever since.

Two other factors listed in *Platt,* the docket conditions of whichever divisions or districts are involved and any special elements that might affect transfer, do not come into play here. Neither side mentions any special elements, and ever since the passage of the Speedy Trial Act, and the switch to individual calendars, consideration of docket conditions has become largely immaterial, *see, e.g., United States*

*v. Gruberg,* 493 F.Supp. 234, 243 (S.D.N.Y.1979); *United States v. Wheaton,* 463 F.Supp. 1073, 1079 (S.D.N.Y.), *aff'd sub nom. United States v. Williams,* 614 F.2d 1293 (2d Cir.1979).

**3.** Indeed, one of the grievances listed by the draftsmen of the Declaration of Independence was British legislation that allowed the transporting of colonists to England to be tried for criminal offenses. *United States v. Aronoff,* 463 F.Supp. 454, 457 (S.D.N.Y.1978).

**4.** This is due, in part, to the fact that the defendants have offered to stipulate to the authenticity of the documents from New York institutions, thereby removing the need for calling foundation witnesses.

they were not connected with Gilboe or his fraud. Thus, while it is true that persons who can give first-hand testimony concerning the source of the funds mentioned in the indictment will be material witnesses, it is also true that persons who can provide a legitimate reason for the Russells' having received funds will also be material witnesses. Most, if not all, of the latter witnesses will come from Memphis.

In addition, the Russells have filed a long list of character witnesses, including the Mayor of Memphis, a bar association president, and a political party leader. Since this case involves allegations of fraud, the *mens rea* of the defendants and their general character will be of some consequence. Even if, as is likely, not all of the character witnesses ultimately testify, the ability of the Russells to call them will be much less, and the cost much more, if the case is tried in New York rather than Memphis. The availability and convenience of these witnesses, while not a controlling factor, is one that should be given considerable weight, *see, e.g., United States v. Haley,* 504 F.Supp. 1124, 1127–28 (E.D.Pa.1981), and in this instance that factor favors transfer.

Moving on to the third factor, the location of the events at issue, the Court reiterates that most of them occurred outside the United States. The events directly involving the Russells, however, occurred between the Bahamas and Memphis, where the defendants' properties, bank accounts, and records are located. This fact also supports the transfer of the case to Memphis. The situation is similar to that in *United States v. Alter,* 81 F.R.D. 524 (S.D. N.Y.1979), in which Judge Weinfeld was prompted to transfer the proceedings to the place which he found to be the actual "nerve center" for the criminal activities described in the indictment. *Id.* at 525–26.

With respect to the fourth factor, the location of documents, the Court finds that it weighs in favor of neither side. On the one hand, the Government has assembled here in New York the documents upon which it intends to rely. On the other hand, the defendants' documents are all located in Memphis.

As for the fifth factor, the possible disruption of the defendants' business, it is quite clear that the Russells' real estate and insurance business would be more interrupted by a trial in New York than by one in Tennessee. The parties expect the trial to last from four to six weeks. Moreover, a number of weeks of pretrial motions and discovery have yet to take place. Although a substantial amount of the Russells' time will be occupied by the trial wherever it is held, it will still be possible for them to carry on their business at least to a limited extent if they are tried in Memphis. Such a potential reduction in business interruption is an additional factor in favor of transfer.

Similarly, as to the sixth factor, the expense to the parties, it appears as if the Russells would be put to much greater expense by having to come to New York than would be the case if the Government were compelled to go to Memphis. Furthermore, looking to the total outlay of funds required to transport and provide accommodations for all parties, witnesses, and counsel, it is very clear that a trial in Memphis would cost considerably less than would a trial here.

Turning to the location of defendants' counsel, the seventh factor, the Court finds that it also weighs in favor of transfer. A grand jury investigation of the Russells was commenced in Memphis three years ago. During that period, they were represented by the firm of Glankler, Brown, Gilliland, Chase, Robinson & Raines, whose offices are in Memphis. That firm represented both defendants through the indictment and continues to represent Mr. Russell. At the suggestion of this Court, because of a possible conflict, Mrs. Russell has retained separate counsel, but his law offices are also located in Memphis. Because Mr. and Mrs. Russells' defenses appear to be compatible, there is an opportunity for a joint defense, the cooperation of counsel, and thus the reduction of costs. Although these attorneys could come to

New York for a couple of months for the criminal proceedings, it would escalate their costs considerably.

With respect to the final factor, the accessibility of the place of trial, the Court finds it to be of little consequence one way or the other. On the one hand, as noted earlier, Memphis is most convenient for all of the defendants' witnesses. On the other hand, for most of the Government's witnesses, who will be coming from the Orient, Memphis will be more difficult to reach than New York, though only marginally so. They probably will have to stop over in California, and although the number of connecting flights to New York is greater than the number to Memphis, the latter city must be an hour or so closer to the West Coast and has an international airport with hundreds of flights daily. In addition, the courthouse in Memphis is closer to that city's airport than is this courthouse to any of New York's major airports.

Finally, looking to the eight *Platt* factors as a group, the Court finds that the overwhelming majority of them weigh in favor of a transfer of this proceeding to the Western District of Tennessee. In addition, the Court notes three other factors that argue for the transfer. First is the fact that this motion was filed as early in the proceedings as it could have been (immediately after the arraignment of Mr. Russell and before that of Mrs. Russell). Such timeliness is in distinct contrast to the situation found in *United States v. Keuylian*, 602 F.2d 1033, 1038 (2d Cir.1979), where there was a significant delay in moving to transfer and the motion was not made until the eve of trial.

Second is the fact that there is virtually no local interest in having this case tried in this district, while there is considerable local interest in having it tried in Memphis. Although certain electronic messages and funds passed through New York, their passage through this, the commercial center of the United States (and perhaps the world), can hardly be considered an uncommon or significant event. Neither the victims, the crime, nor the defendants are local. On the other hand, the Russells and their activities have been a matter of concern in Memphis for several years, and many of their friends and associates have already testified before grand juries. That community, therefore, has an active interest in the outcome of their case.

Finally, the major governmental interest in keeping the case in New York is to retain the prosecution team that successfully prosecuted Gilboe, namely Assistant United States Attorney Michael Feldberg and the Special Agents of the F.B.I. While it is understandable that the Government would wish to keep this outstanding team on the case, it is no great problem to move them to Memphis for the trial. Moreover, the United States Attorney's office in that district already has substantial familiarity with the Russells and their finances.

In sum, even if the Court adopts the strictest standard, i.e., that "[t]o warrant a transfer from the district where an indictment [has been] properly returned it should appear that a trial there would be so unduly burdensome that fairness requires the transfer to another district," *United States v. United States Steel Corp.*, 233 F.Supp. 154, 157 (S.D.N.Y.1964), it is still clear that the defendants' motion to transfer should be granted. This is not a case like *United States Steel*, in which Judge Weinfeld refused to transfer the proceedings from the district that was the locus of most of the alleged criminal activity, the business offices (though not the principal places of business) of all of the corporate defendants, and the law offices of most of the defendants' retained counsel. Rather, this case is similar to *Aronoff, supra*, 463 F.Supp. at 459–60, in which the fact that one of three defendants, his witnesses, his alleged illegal activities, his business, and his counsel were all located in another district persuaded Judge Cannella to transfer the proceedings against him to that district. Indeed, the argument for transfer in this case is even more compelling than it was in *Aronoff*, for transfer here will not result, as it did there, in the Government's being compelled to conduct two separate trials in

two widely separate locations because the proceedings against only one of the three defendants was transferred. If transfer was appropriate in that rather difficult situation, it is certainly appropriate here. Accordingly, it is hereby

ORDERED, that the instant case is transferred to the United States District Court for the Western District of Tennessee, Memphis Division.

SO ORDERED.