MEMORANDUM OPINION AND ORDER
 

 KRAM, District Judge.
 

 Defendant Robert Martins (“Martins”) moves, pursuant to Federal Rule of Criminal Procedure 21(b), to transfer this action to the Southern District of Nevada. Defendants Antonio Guastella (“Guastella”), Michael McClain (“McClain”), M,arianne Curtis (“Curtis”), Louis Frechette (“Fre-chette”), and Roy Thornton (“Thornton”) join in this motion.
 
 [1]
 
 Martins and Guastel-la also move to compel various items of discovery.
 
 [2]
 
 Finally, Martins, Guastella, and Thornton request leave to file additional motions. For the reasons set forth below, all motions are denied.
 

 BACKGROUND
 
 [3]
 

 On September 21, 1999, a grand jury sitting in the Southern District of New York returned a sixteen-count indictment charging six defendants with conspiracy to commit wire fraud, wire fraud, conspiracy to commit money laundering, engaging in monetary transactions in property derived from unlawful activity, and transportation of stolen property. Defendants are alleged to have defrauded hundreds of investors out of over $16 million by means of a “currency leasing” and “high-yield investment” scheme. The program, advertised in the Wall Street Journal and over the Internet, offered investors the opportunity to “lease” or “rent” $1 million on payment of a fee of $35,000. Investors could “rent” multiple blocks of $1 million by increasing their investment in $35,000 increments for each $1 million desired. Defendants represented to investors that the “rented” currency would be placed into a “high-yield investment program,” and investors were guaranteed that they would earn monthly profits of approximately 50% of the amount of funds on deposit for ten
 
 *338
 
 months. Investors were told that the funds were being leased from “First Mutual Sparkassa,” which purported to be a savings bank in Stockholm, Sweden. The Government alleges,
 
 inter alia,
 
 that such trading programs do not exist, and that “First Mutual Sparkassa” was not a Swedish savings bank and did not hold any funds on behalf of investors.
 

 DISCUSSION
 

 I. Transfer of Venue
 

 A. Standard of Law
 

 Federal Rule of Criminal Procedure 21(b) provides:
 

 For the convenience of the parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to that defendant or any one or more of the counts thereof to another district.
 

 Fed.R.Crim.P. 21(b). In deciding whether transfer is appropriate under Rule 21(b), the Court considers the factors set forth in
 
 Platt v. Minnesota Mining & Mfg. Co.,
 
 376 U.S. 240, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964)
 
 (“Platt”).
 
 These factors include: (1) the location of the defendants; (2) the location of possible witnesses; (3) the location of events likely to be at issue; (4) the location of relevant documents; (5) the potential for disruption of the defendant’s business if transfer is denied; (6) expenses to be incurred by the parties if transfer is denied; (7) the location of counsel; (8) the relative accessibility of the place of trial; (9) docket conditions in each district; and (10) any other special circumstances that might bear on the desirability of transfer. See
 
 Platt,
 
 376 U.S. at 243-44, 84 S.Ct. 769;
 
 United States v. Maldonado-Rivera,
 
 922 F.2d 934, 966 (2d Cir.1990),
 
 cert. denied,
 
 501 U.S. 1211, 111 S.Ct. 2811, 115 L.Ed.2d 984 (1991). No one of these factors is dispositive; rather, a court should weigh all of these factors and determine whether the interests of justice would be better served by changing the trial venue.
 
 See United States v. Maldonado-Rivera,
 
 922 F.2d at 966;
 
 United States v. Elson,
 
 968 F.Supp. 900, 903 (S.D.N.Y.1997). “As a general rule,” however, “a criminal prosecution should be retained in the original district” in which it was filed.
 
 See United States v. United States Steel Corp.,
 
 233 F.Supp. 154, 157 (S.D.N.Y.1964);
 
 see also United States v. Posner,
 
 549 F.Supp. 475, 477 (S.D.N.Y.1982). The defendant bears the burden of justifying a transfer under Rule 21(b).
 
 See United States v. Spy Factory, Inc.,
 
 951 F.Supp. 450, 464 (S.D.N.Y. 1997);
 
 United States v. Persico,
 
 621 F.Supp. 842, 858 (S.D.N.Y.1985).
 

 B.
 
 Platt
 
 Factors
 

 1. Location of Defendants
 

 Courts should, whenever possible, try defendants where they reside.
 
 United States v. Russell,
 
 582 F.Supp. 660, 662 (S.D.N.Y.1984). Three of the defendants — Martins, Guastella, and McClain— reside in or near Las Vegas, in the Southern District of Nevada.
 
 See
 
 “Martins’ Memo.” at 3. Another defendant, Curtis, lives in Orange County, California, immediately south of Los Angeles and “much closer to Las Vegas than to New York City.”
 
 Id.
 
 The remaining two defendants live on the East Coast: Thornton resides in Georgia, and Frechette resides in Florida.
 
 See
 
 Memorandum of Law of the United States in Opposition to Defendant Martins’ Pretrial Motions (“Gov’t’s Memo”), at 9.
 

 On balance, the defendants are located closer to the Southern District of Nevada than to the Southern District of New York. Three of the six defendants reside in or near Las Vegas, and a fourth, Curtis, lives much closer to Las Vegas than to New York. Therefore, the location of the defendants weighs slightly in favor of transfer.
 

 2. Location of Witnesses
 

 Martins submits that most of the witnesses the defendants would call live in Nevada.
 
 See
 
 Martins’ Memo, at 3. Howev
 
 *339
 
 er, defendants have not identified any witnesses they would call at trial. Defendants have not provided the Court with specific examples of witnesses’ testimony, nor have defendants indicated why their witnesses would be unable to testify in New York. Thus, defendants have not met their “burden of proving that the location of necessary and relevant witnesses compels a transfer” to the Southern District of Nevada.
 
 United States v. Spy Factory, Inc.,
 
 951 F.Supp. at 457. Accordingly, the Court finds that the location of witnesses does not weigh in favor of transfer.
 

 3. Location of Events
 

 Martins contends that “the nexus of events complained of by the government is Las Vegas, Nevada.” Martins’ Memo, at 4. Martins asserts,
 
 inter alia,
 
 that “Lt]he web site
 
 http://Assetbrokers.com
 
 complained of by the government was allegedly maintained by a Las Vegas entity!,]” and that “[t]he searches and seizures conducted pursuant to various warrants in this case were almost all conducted in Las Vegas.”
 
 Id.
 
 at 4. Martins further asserts that transferred funds “were allegedly deposited into the accounts of Nevada nominee companies at Norwest Bank in Las Vegas!,]” and that “correspondence, messages, and FAXes directed to First Mutual Sparkassa in Sweden were forwarded to Las Vegas.”
 
 Id.
 

 In response, the Government submits that “ft]he events in this case are national, and indeed international, in scope.” Gov’t’s Memo, at 12. The Government argues that “Martins marketed his fraud over the Internet!,]” and that “[h]is conduct took place wherever victims logged on to his web site and, in reliance on his misrepresentations, transferred their ‘rental fees.’ ”
 
 Id.
 
 In addition, the Government submits that this case has strong connections to New York. Pursuant to Martins’ directions, victims allegedly sent over $14 million to Chase Manhattan-New York, for credit to the Global Credit account at Smith Barney-New York.
 
 Id.
 
 Martins and Guastella also allegedly laundered fraud proceeds in and out of various New York bank accounts during the criminal operation.
 
 See id.
 
 at 13.
 

 Thus, while defendants may have initiated the criminal conduct from Las Vegas, they also allegedly defrauded investors from all over the world, and used New York banks to effectuate the scheme. To date, the Government’s investigation has revealed approximately 190 victims of the scheme, located across the United States, Europe, Canada, and the Caribbean.
 
 See
 
 Gov’t’s Memo, at 11. Significantly, the investigation has not revealed a single victim who resides in Nevada.
 
 See id.
 
 Therefore, because the criminal activity that was alleged to have occurred in this case was national and even international in scope, and had ties to both New York and Las Vegas, the location of the events at issue favors neither side.
 
 See United States v. Spy Factory, Inc.,
 
 951 F.Supp. at 457 (“Because the criminal activity that was alleged to have occurred in this case was concededly national in scope, the location of the events at issue favors neither side.”).
 

 4. Location of Documents
 

 The documentary evidence in this case is “tremendously voluminous, and is almost entirely located at the Customs Service in New York City.” Gov’t’s Memo, at 13. The Government brought much of this evidence to New York by seizing “over 44 boxes of documents while executing search warrants at the homes of defendants Martins, Guastella and Curtis.”
 
 Id.
 
 at 13-14. In addition, the Government has received over 4,600 pages of documents from victims, and over 10,000 pages of bank and credit card account records relevant to the receipt and use of funds received from victims.
 
 See id.
 
 at 114. Finally, the Government submits that “significant records remain in the possession of Smith Barney here in New York.”
 
 Id.
 

 Martins sole assertion with respect to documents is that “[sjuch documents and
 
 *340
 
 records as have not already been seized by the government from locations in the Southern District of Nevada are, for the most part, still located in that district.” Martins’ Memo, at 5. There is nothing before the Court to indicate that any documents remain in Nevada. Thus, defendants have not shown that the location of documents and records compels transfer.
 

 The Government has shown that most of the documents are in New York. However, courts have recognized that where the Government has “seized documents from one location and transferred them to, and consolidated them at, the place of trial, the fact that the documents were to be found there could not properly lie in favor of the Government’s opposition to the change of venue.”
 
 United States v. Spy Factory, Inc.,
 
 951 F.Supp. at 458. Therefore, the Court finds that the location of documents in this case is a neutral factor.
 

 5. Disruption of Defendants’ Businesses
 

 Martins generally alleges that “disruption is considerable each time the Nevada defendants and Ms. Curtis must fly to New York City to make an appearance,” and that “[t]he Nevada venue would of course be less disruptive for these individuals’ business and personal lives.” Martins’ Memo, at 5. It is clear, however, that “inconvenience to the defendant or his business is not, by itself, a sufficient basis for transfer of venue.”
 
 United States v. Antia,
 
 No. 97 Cr 733, 1999 WL 294788 at *2 (E.D.N.Y. March 22, 1999). Defendants have not supplied the Court with any facts indicating how their businesses, jobs, or careers would be disrupted by trial in this district. Accordingly, this factor does not weigh in favor of transfer.
 

 6. Expenses to the Parties
 

 Martins submits that “proceedings in the Southern District of New York represent a tremendously greater expense to the three Nevada defendants than would Nevada proceedings.” Martins’ Memo, at 6. Martins notes that “[t]he defendants must pay for travel, lodging and meal expenses for themselves and their attorneys each time the Court requires an appearance.”
 
 Id.
 
 Defendant Thornton, who resides in Georgia, also prefers a Nevada venue on the grounds that “it is less expensive for him to travel to and live in Las Vegas than it is for him to travel to and five in New York.”
 
 See
 
 Letter from Andrew G. Patel to the Honorable Shirley Wohl Kram, dated January 17, 2000 (“Patel Letter”), at 3. Thornton has submitted evidence indicating that hotel accommodations in New York are more expensive than similar accommodations in Las Vegas.
 
 See
 
 Letter from Andrew G. Patel to the Honorable Shirley Wohl Kram, dated March 8, 2000 (“Patel Letter II”), at 2.
 
 [4]
 

 In response, the Government asserts that it would be put to great expense to relocate more than 100 boxes of documents, and its entire prosecution team, to Nevada.
 
 See
 
 Gov’t’s Memo, at 16. Transfer would require the Government to “bring[ ] at least one Assistant United States Attorney in Nevada up to speed on the case.”
 
 Id.
 
 The Government also submits that a transfer would result in “the costs of having new attorneys for Fre-chette and Thornton learn this case.”
 
 [5]
 

 Id.
 
 In addition, “Curtis has retained New
 
 *341
 
 York counsel, meaning that a transfer will require her either to retain new counsel in Las Vegas, who will have to learn the case anew, or to pay the expenses of having her New York counsel travel to Las Vegas.”
 
 Id.
 

 On balance, the expenses associated with this proceeding weigh in favor of neither party. Martins and Thornton have indicated that, absent transfer, defendants will incur expenses associated with travel to New York. However, if this proceeding were transferred, defendants and witnesses not from the Las Vegas area would still incur such expenses.
 
 [6]
 
 Furthermore, while defendants may incur expenses associated with travel to New York, the Government has demonstrated that transfer of this action would result in tangible expenses as well. Thus, the Court finds that this factor is a neutral factor that weighs in favor of neither side.
 

 7. Location of Counsel
 

 The location of counsel does not weigh in favor of a transfer of venue. Four of the six defendants — McClain, Curtis, Fre-chette, and Thornton — have New York counsel. While counsel for McClain was only recently appointed, counsel for Curtis, Frechette, and Thornton have all been involved in this matter for over a year.
 
 [7]
 
 Only Guastella’s attorney is based in Nevada; Martins’s counsel is based in Los An-geles. In light of the fact that the majority of defense attorneys are based in New York and have invested over one year in learning this case, defendants have not satisfied their burden of showing that the location of counsel compels transfer. Thus, this factor does not weigh in favor of transfer.
 

 8. Relative Accessibility
 

 The scope of the allegedly fraudulent scheme is national and even international. Therefore, as victims and potential witnesses are scattered around the globe, neither Las Vegas nor New York is dearly more accessible than the other. Furthermore, neither party has indicated any problems of accessibility with either forum. Accordingly, the Court finds that this factor is neutral.
 
 See also United States v. United States Steel Corp.,
 
 233 F.Supp. 154, 158 (S.D.N.Y.1964) (“The efficiency of modern air transportation renders rather sterile any argument” that one forum is more accessible than the other.).
 

 9. Docket Conditions
 

 Martins submits that “[djefendant can make no representation as to this factor, save the observation that the Court in the Southern District of New York is one of the busiest in the United States.” Martins’ Memo, at 7. The Government argues that this factor weighs against transfer, because an Assistant U.S. Attorney and a District Judge in Nevada would have to “immerse themselves in a new case,” but the Government also admits that it “has no direct knowledge concerning the docket conditions in the District of Nevada.” Gov’t’s Memo, at 19. Thus, there is no evidence before the Court to suggest that the docket conditions of either forum compel transfer. Accordingly, the Court finds that this factor does not weigh in favor of transfer.
 

 10. Special Circumstances
 

 Martins has not indicated any “special circumstances” warranting transfer of this proceeding. Thornton has suggested two additional factors warranting transfer, namely (1) the greater costs of assigned
 
 *342
 
 counsel in the Southern District of New York relative to the Southern District of Nevada, and (2) the fact that the motion to transfer venue was filed in the early stages of this action.
 
 See
 
 Patel Letter at 3. In addition, Curtis submits that she “is under severe financial hardship” and that “she cannot be away from her home for prolonged periods, because of her 90+ year old mother who is dependent upon her.” Letter from Stephen R. Hill to the Honorable Shirley Wohl Kram, dated February 2, 2000 (“Hill Letter”).
 

 The Court has considered the costs of assigned counsel.
 
 [8]
 
 While the per-hour rate of pay for assigned counsel is greater in the Southern District of New York than in the Southern District of Nevada, these rates of pay cannot be considered in isolation. Cost “savings” that would result from transfer of this action to Nevada must be considered with the additional costs the Government would incur in relocating its prosecution team to that District, as well' as the otherwise unnecessary costs associated with having assigned counsel in Las Vegas learn what assigned counsel in New York already know. Accordingly, the Court finds that the different rates of pay for assigned counsel do not compel transfer of this action.
 

 As for the timing of the motion, it is true that courts, in deciding whether to transfer an action, have considered a defendant’s delay in moving to transfer.
 
 See, e.g., United States u Maldonado-Rivera,
 
 922 F.2d at 966;
 
 United States v. Spy Factory, Inc.,
 
 951 F.Supp. at 461. Here, however, Thornton merely argues that the instant motion was filed at the appropriate time— in the early stages of the prosecution. Thus, while there is no evidence of delay that could potentially weigh against transfer, the Court finds that the fact that the motion was filed at the appropriate time does not compel transfer.
 

 Finally, the Court has considered Curtis’s “financial hardship” and the fact that Curtis takes care of her elderly mother. The Court notes that each potential venue (New York and Las Vegas) would require Curtis to travel and to spend time away from her home in California. In any case, Curtis has not supplied the Court with any evidence of financial hardship,
 
 [9]
 
 nor has she indicated the extent to which her mother depends on her presence. Accordingly, the Court finds that these circumstances do not compel transfer.
 

 C. Weighing of
 
 Platt
 
 Factors
 

 The Court has carefully considered each of the above factors. The only factor that weighs slightly in favor of transfer is the fact that four of the six defendants reside in or near the Southern District of Nevada. The location of events at issue, the location of documents, expenses to the parties, and the relative accessibility of each forum are neutral factors that weigh in favor of neither party. With respect to the rest of the factors, the defendants have failed to make a showing that they compel transfer of this matter. Therefore, given the general presumption that “a criminal prosecution should be retained in the original district,”
 
 United States v. Posner,
 
 549 F.Supp. 475, 477 (S.D.N.Y.1982), the Court finds that defendants have not shown that the interests of justice require a transfer. Accordingly, the motion to change venue is denied.
 

 II. Discovery Requests
 

 A. Rule 16 Material
 

 Martins and Guastella seek certain items of discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure.
 
 *343
 
 Specifically, Martins and Guastella seek (1) defendants’ own statements, including tape recordings of the defendants; (2) documents and tangible objects; and (3) scientific reports or conclusions of scientific tests or analysis.
 
 See
 
 Martins’ Memo. II at 18, 21; Notice of Motion and Motion for Discovery (“Discovery Motion”), Items A(l), C, D, E, F, G, H, and J. The Government submits that it has already produced all evidence of statements of any of the defendants, as well as documents and tangible objects that the Government may use at trial or which are material to the preparation of the defendants’ defenses.
 
 See
 
 Gov’t’s Memo, at 21, 26. The Government also submits that it will provide defendants with any written reports of any scientific analysis as they become available.
 
 See id.
 
 at 26. Therefore, the Court declines to order production of the requested Rule 16 materials.
 

 B. Brady Material
 

 Martins and Guastella broadly seek disclosure of exculpatory evidence pursuant to
 
 Brady v. State of Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)
 
 (“Brady”). See
 
 Martins’ Memo. II at 17; Discovery Motion, Item J. However, courts have consistently held that
 
 Brady
 
 does not establish a general right to pre-trial discovery.
 
 See, e.g., United States v. LeRoy,
 
 687 F.2d 610, 619 (2d Cir.1982),
 
 cert. denied,
 
 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983);
 
 United States v. Polanco,
 
 No. 97 Cr. 106, 1997 WL 452389 at *3 (S.D.N.Y. Aug.8, 1997). Furthermore, the Government has acknowledged its ongoing obligations pursuant to
 
 Brady
 
 and has represented that it is unaware of any
 
 Brady
 
 materials at the present time and that it will promptly produce any
 
 Brady
 
 materials when they become known.
 
 See
 
 Gov’t’s Memo, of Law at 21-22. Accordingly, the Court declines to order production of
 
 Brady
 
 material.
 

 C. Jencks Act Material
 

 Martins and Guastella broadly seek disclosure of evidence impeaching or contradicting testimony of Government witnesses, including criminal records of all witnesses, transcripts of grand jury testimony relating to this case, and the substance of promises or plea bargains between the witnesses and the Government.
 
 See
 
 Martins’ Memo. II at 21, 23-24; Discovery Motion, Items A(2), B, D, I, J, K, L, M, N, O, P, S, and T. These requests generally relate to impeachment and so-called 3500 material.
 
 See
 
 18 U.S.C. § 3500
 
 et seq.
 
 (the “Jencks Act”).
 

 It is well settled that the Government need not disclose statements of Government witnesses until the witnesses have testified on direct examination.
 
 United States v. Percevault,
 
 490 F.2d 126, 132 (2d Cir.1974);
 
 see also United States v. Polanco,
 
 No. 97 Cr. 106, 1997 WL 452389 (S.D.N.Y. Aug.8, 1997). This includes information bearing on a witness’s credibility, including information regarding any promises or payments made to witnesses, as well as appropriate reports by law enforcement officers.
 
 See United States v. Biaggi,
 
 675 F.Supp. 790, 812 (S.D.N.Y.1987). Here, the Government has agreed to follow the usual practice in this District and provide 3500 material at least one day before each witness’s testimony.
 
 See
 
 Gov’t’s Memo, at 24. Therefore, the Court declines to order production of the requested material at this time.
 

 D. Co-Conspirators’ Statements
 

 Martins and Guastella request that the Government disclose the substance of any and all statements of co-conspirators.
 
 See
 
 Martins’ Memo II at 19-20; Discovery Motion, Item I. The Government has already produced “numerous consensually recorded conversations that contain many co-conspirator statements made during the course of the conspiracy.” Gov’t’s Memo, at 24. With respect to other statements by co-conspirators, the Second Circuit has held that “Rule 16(a) simply does not encompass these statements, nor does the Jencks Act
 
 *344
 
 permit their disclosure over the objection of the government.”
 
 United States v. Per-cevault,
 
 490 F.2d 126, 131 (2d Cir.1974). The Government has represented that it has met its obligation under Rule 16, and will meet its obligation under the Jencks Acts. Accordingly, the request for co-conspirators’ statements, beyond what the Government has already provided, is denied.
 

 E. Written Statements of Non-Witnesses
 

 Martins and Guastella seek disclosure of the statements of any person the Government has spoken to concerning this case.
 
 See
 
 Discovery Motion, Items A(2) and D. Rule 16(a)(2) expressly provides that except as provided for in the Jencks Act, the discovery or inspection of statements made by prospective Government witnesses is not required.
 
 See
 
 Fed. R. Cr. P. 16(a)(2). The Jencks Act, in turn, provides that no statement of a prospective Government witness other than the defendant shall be the subject of subpoena, discovery or inspection until the witness has testified.
 
 See
 
 18 U.S.C. § 3500(a). Accordingly, the request for written statements from any person the Government has spoken to is denied.
 

 F. Surveillance Materials
 

 Defendants also request documents pertaining to any surveillance done in this case.
 
 See
 
 Discovery Motion, Item R. The Government represents that it has already provided the documents supporting the searches conducted in this case.
 
 See
 
 Gov’t’s Memo, at 26-27. Further, evidence seized during the searches has been made available to defense counsel.
 
 See id.
 
 at 27. Therefore, the request for any materials related to surveillance in this case is denied.
 

 G. Witness List
 

 Martins and Guastella ask the Court to order the Government to provide the identities and addresses of potential Government witnesses.
 
 See
 
 Martins’ Memo. II at 22-23. However, Rule 16 “does not require the Government to furnish the names and addresses of its witnesses in general.”
 
 United States v. Bejasa,
 
 904 F.2d 137, 139 (2d Cir.1990),
 
 cert. denied,
 
 498 U.S. 921, 111 S.Ct. 299, 112 L.Ed.2d 252 (1990). Although the Court has the power to compel pre-trial disclosure in appropriate cases, the defendant must first make a “specific showing that disclosure [is] both material to the preparation of [the] defense and reasonable in light of the circumstances surrounding [the] case .... ”
 
 Id.
 
 at 139-40 (internal quotation omitted). Here, defendants have failed to make any specific showing of need for pre-trial disclosure of a witness list. Accordingly, the request for production of a witness fist is denied.
 

 H. Informant’s Name, Identity, and Whereabouts
 

 Martins and Guastella seek the name, identity, and whereabouts of any informant or cooperating witness who gave information leading to the arrest and/or indictment of defendants, as well as whether said informant was paid by the Government for such information.
 
 See
 
 Martins’ Memo. II at 23-24; Discovery Motion, Items B(5)-(20) and Q. However, the “disclosure of the identity or address of a confidential informant is not required unless the informant’s testimony is shown to be material to the defense.”
 
 United States v. Saa,
 
 859 F.2d 1067, 1073 (2d Cir.1988),
 
 cert. denied
 
 489 U.S. 1089, 109 S.Ct. 1555, 103 L.Ed.2d 858 (1989). Furthermore, the defendant “bears the burden of establishing” materiality.
 
 United States v. Jimenez,
 
 824 F.Supp. 351, 364 (S.D.N.Y.1993). “Mere speculation ... that the informant may possibly be of some assistance does not overcome the strong public interest in protecting informants.”
 
 Id.
 
 at 365.
 

 Defendants have not identified any defense as to which any informant’s testimony might relate, nor have they made a showing as to how an informant’s testimo
 
 *345
 
 ny would be material to a defense. Thus, Martins and Guastella have failed to meet their burden of establishing the materiality of the confidential informants’ identities to their respective defenses. Accordingly, the motion for an order directing the Government to identify the confidential informants is denied.
 

 III. Additional Motions
 

 Martins, Guastella, and Thornton also move for permission to file additional motions. Should defendants seek to file an additional motion or motions in the future, the Court will determine whether to permit such a motion or motions at that time. Accordingly, the requests for leave to file additional motions are denied at this time.
 

 CONCLUSION
 

 For the reasons set forth above, (1) the motion to transfer this action to the Southern District of Nevada, (2) the various motions to compel discovery, and (3) the motions for leave to file additional motions, are denied.
 

 SO ORDERED.
 

 [1]
 

 . Martins is the only defendant to have fully briefed the motion to change venue.
 
 See
 
 Martins' Memorandum of Points and Authorities ("Martins’ Memo."), attached to Notice of Motion for Change of Venue. Thornton and Curtis have filed letters with the Court indicating their support of the motion, and submitting various items for the Court's consideration. Guastella, McClain, and Frechette have indicated their desire to join the motion to change venue, but offer no evidence in support of it. In deciding this motion, the Court has considered all submissions.
 

 [2]
 

 . Only Martins briefed the motion to compel discovery.
 
 See
 
 Martins' Memorandum of Points and Authorities ("Martins’ Memo. II”), attached to Notice of Motion for Discovery.
 

 [3]
 

 All facts are taken from the superseding indictment unless otherwise noted.
 

 [4]
 

 . Thornton's counsel, Andrew G. Patel, submits that "[t]he cheapest hotel room that the National Travel Service could find in New York was at the Best Western at $139.00 per night,” and that "[i]n Las Vegas, Mr. Thornton would have a choice of hotels, some rather luxurious, at the rate of $39.00.” Patel Letter II at 2. Patel also states that "Your Honor is well aware of the cost of food in New York City. Many of the hotels and casinos in Las Vegas have buffets were [sic] a complete meals [sic] cost $5.00 to $10.00.”
 
 Id.
 

 [5]
 

 . Frechette is currently represented by the Federal Defender Division of the Southern District of New York. Thornton is represented by counsel appointed pursuant to the Criminal Justice Act.
 
 See
 
 Gov’t’s Memo, at 16.
 

 [6]
 

 . Moreover, defendants have not proffered the testimony of specific witnesses in Nevada or anywhere else that would require travel to New York. Thus, it is possible that transfer would result in greater expense than maintaining the action in New York if a significant number of witnesses reside in or near New York.
 

 [7]
 

 . The original indictment was filed in September 1998.
 

 [8]
 

 . Assigned counsel in the Southern District of New York are compensated at a rate of $75.00 per hour for both in-court and out-of-court work.
 
 See
 
 Patel Letter at 4. Assigned counsel in the Southern District of Nevada are compensated at the rate of $60.00 per hour for in-court work, and $40.00 per hour for out-of-court work.
 
 Id.
 

 [9]
 

 . The Court notes that Curtis has retained counsel in New York.